UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

PRASANNA GOONEWARDENA,

                        Plaintiff,                       **MEMORANDUM & ORDER**
                                                       15-CV-5239 (MKB) (ST)

        v.

LOUIS SPINELLI, ANGELA MOODY, JAMES
ALFIERI and SHAWN WILLIAMS

                        Defendants.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Prasanna Goonewardena, proceeding *pro se*, commenced the above-captioned

action on September 10, 2015, against Defendants Louis Spinelli and James Alfieri, who are

New York State court officers, alleging violations of federal and New York State law.  (Compl.,

Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on November 6, 2015, adding

Defendant Angela Moody, a New York State court reporter, and claims against Moody for

alleged violations federal and New York State law.  (Am. Compl., Docket Entry No. 8.)  With the

Court's permission, Plaintiff filed a Third Amended Complaint ("TAC") on May 19, 2016,

adding Defendant Shawn Williams, a New York State court officer.  (TAC, Docket Entry

No. 35.)[1]

      Plaintiff's claims arise from an altercation with court officers at the Supreme Court of

New York, Queens County, the court officers' issuance of a summons to Plaintiff for disorderly

---

[1] On February 16, 2016, Magistrate Judge Lois Bloom granted Plaintiff leave to file a
Second Amended Complaint, (Order dated Feb. 16, 2016, Docket Entry No. 23), which Plaintiff
filed on March 23, 2016.  (Second Am. Compl. ("SAC"), Docket Entry No. 26.)  The case was
reassigned to Magistrate Judge Steven Tiscione on March 28, 2016, (Order dated Mar. 28, 2016),
who granted Plaintiff leave to file the TAC, (Order dated Apr. 28, 2016, Docket Entry No. 32).

conduct, and Plaintiff's appearance in state court to respond to the summons. (TAC ¶¶ 18–76.) Defendants move to dismiss the TAC for lack of personal jurisdiction and failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively. (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 42; Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 43.) While Defendants' motion was pending, Plaintiff filed a motion for leave to amend the TAC, seeking to add fraudulent inducement and procedural due process claims against Moody. (Pl. Mot. to Amend, Docket Entry No. 46.)

On November 14, 2016, the Court referred the motions to Magistrate Judge Steven Tiscione for a report and recommendation. (Order dated Nov. 14, 2016.) By report and recommendation dated August 14, 2017 (the "R&R"), Judge Tiscione recommended that the Court deny Plaintiff's motion to amend the TAC, grant in part and deny in part Defendants' motion, and dismiss Moody from the action. (R&R, Docket Entry No. 57.) Defendants filed timely objections to the R&R. (Defs. Objs. to R&R ("Defs. Objs."), Docket Entry No. 61.) Plaintiff filed a letter informing the Court that he has no objections to the R&R. (Pl. Letter dated Aug. 29, 2017 ("Pl. Letter"), Docket Entry No. 60.) For the reasons discussed below, the Court adopts Judge Tiscione's R&R in its entirety. The Court denies Plaintiff's motion, grants in part and denies in part Defendants' motion, and dismisses Moody from the action.

## I.  Background

The Court assumes familiarity with the facts of the case as set forth in detail in the R&R and assumes the truth of the allegations in the TAC for the purpose of this Memorandum and Order.

### a.  Factual background

On September 11, 2014, Plaintiff went to the state court to conduct research at the state court's law library.  (TAC ¶ 18.)  Plaintiff was carrying a bag containing "a large tape recorder." (*Id.*)  In order to enter the state courthouse, Plaintiff's bag had to be scanned by the state court's security scanner.  (*Id.*)  After Plaintiff's bag was scanned, Court Officer Williams asked Plaintiff if he had "a recorder in the bag."  (*Id.*)  Plaintiff responded that he did, and Court Officer Williams told Plaintiff that he was not allowed to take the recorder into the courthouse but could check it at the security desk and retrieve it when he was leaving.  (*Id.*)  Court Officer Williams gave Plaintiff a form to complete to check the recorder at the security desk.  (*Id.* ¶ 19.)  Because Plaintiff was unfamiliar with the form and the check-in procedures, Plaintiff "took time to read" the form before completing it.  (*Id.*)  As Plaintiff read the form, Court Officer Williams "became agitated and impatient" and asked Plaintiff whether he was going to sign the form.  (*Id.*)  Plaintiff responded that he was still reading the form.  (*Id.*)  Court Officer Williams then said "[t]here is nothing to read" and instructed Plaintiff to "[e]ither sign the form or get out of here."  (*Id.*) Plaintiff told Court Officer Williams not to "get an attitude," which caused Court Officer Williams to become "physically aggressive and combative" and threaten "to punch [Plaintiff] in the face."  (*Id.* ¶ 20.)  Plaintiff told Court Officer Williams to "[t]ake [his] best shot."  (*Id.*)  Court Officer Williams then took the form from Plaintiff's hands, "ripped it into pieces" and told Plaintiff to "get the hell out of here."  (*Id.* ¶ 21.)  Plaintiff asked to speak with Court Officer Williams' supervising officer.  (*Id.*)

Court Officer Spinelli approached during Plaintiff's exchange with Court Officer Williams and inquired about the issue between the two, to which Court Officer Williams responded that Plaintiff was "causing trouble" because he did not "want to sign the paper for the recorder."  (*Id.* ¶ 24.)  Plaintiff denied causing any trouble.  (*Id.* ¶ 25.)  Court Officer Spinelli

then "grabbed [P]laintiff by his arm and dragged [him] outside." (*Id.*) When Plaintiff was outside, Court Officer Spinelli "hit [P]laintiff on the head with the tape recorder." (*Id.* ¶ 26.) Plaintiff asked Court Officer Spinelli to return Plaintiff's recorder and again asked to speak to a supervising court officer. (*Id.*)

Court Officer Spinelli radioed for a supervising officer and Court Officer Alfieri arrived shortly thereafter. (*Id.* ¶ 27.) Court Officer Spinelli told Court Officer Alfieri that Plaintiff was "causing trouble." (*Id.* ¶ 28.) Plaintiff denied that he was causing any trouble. (*Id.*) Court Officer Alfieri instructed Court Officer Spinelli to take Plaintiff back inside the courthouse and issue him a summons. (*Id.*) Plaintiff stated that he was "going to go home" and did not "want to go inside anymore." (*Id.*) From approximately fifteen feet away from Plaintiff, Court Officer Alfieri "ran" toward Plaintiff, "grabbed [P]laintiff's left hand," "twisted [P]laintiff's left arm," "pushed [P]laintiff against [a] wall" and told Plaintiff that if he did not reenter the courthouse to receive a summons that he would be handcuffed and forcibly taken inside. (*Id.* ¶¶ 29, 32.) Plaintiff agreed to go back inside the courthouse. (*Id.* ¶ 29.)

After Plaintiff and Court Officers Alfieri and Spinelli went inside the courthouse, Court Officer Alfieri instructed Court Officer Spinelli to issue Plaintiff a summons for disorderly conduct. (*Id.* ¶ 36.) Court Officer Spinelli asked Plaintiff for his identification to complete the summons. (*Id.* ¶ 43.) Plaintiff complied. (*Id.*)

Plaintiff returned to the state court on November 6, 2014, to answer the summons and appeared before Judge Donna Golia. (*Id.* ¶¶ 59–62, 96.) Moody was the court reporter for the proceeding. (*Id.* ¶¶ 59–62, 96.) According to Plaintiff, Judge Golia dismissed the charges against Plaintiff, but despite the dismissal of the charges, Judge Golia and Moody falsified the

court records to state that Plaintiff accepted a six-month adjournment in contemplation of dismissal pursuant to New York Penal Law section 170.55. (*Id.* ¶¶ 66–73.)

Plaintiff returned to the state court on July 16, 2015, "for [a] litigation purpose." (*Id.* ¶ 46.) As Plaintiff was leaving the state court, he saw Court Officer Spinelli and told Court Officer Spinelli that "you assaulted me the other day and [] violated my [Fourth] [A]mendment rights. You lied on the summons . . . [and] [i]t took me the entire day to get it dismissed." (*Id.*) Court Officer Spinelli responded by taking out his firearm and "hold[ing] it against his [own] stomach." (*Id.* ¶ 47.) Plaintiff walked away because he was in "fear[] for his safety." (*Id.*)

Plaintiff alleges that Court Officer Alfieri's actions outside the courthouse on September 11, 2014, caused injuries to Plaintiff's left shoulder and left elbow, which prevented him from "lift[ing] any heavy objects for two months" after the encounter. (*Id.* ¶¶ 30, 86.)

### b.   Procedural background

Plaintiff alleges claims against the court officers pursuant to 42 U.S.C. § 1983 for false arrest, excessive force, selective enforcement of the law based on race and national origin, denial of the right to a fair trial based on fabrication of evidence, malicious abuse of the criminal process, malicious prosecution, failure to intervene, unconstitutional defamation and First Amendment retaliation and conspiracy. (TAC ¶¶ 18–158.) Plaintiff alleges state law claims against the court officers for false arrest, assault, battery, malicious prosecution and conspiracy. (*Id.*) Against Moody, Plaintiff alleges claims pursuant to section 1983 for unconstitutional defamation, the denial of substantive due process and conspiracy, as well as state law claims for breach of contract, negligent misrepresentation and conspiracy.[2] (*Id.*)

---

[2]   While Plaintiff did not specifically allege each of the claims specified above, because Plaintiff is proceeding *pro* se, in accordance with Second Circuit precedent, Judge Tiscione liberally construed the TAC to allege any claims supported by the factual allegations in the TAC.

Defendants moved to dismiss the TAC for lack of personal jurisdiction and failure to state a claim upon which relief may be granted, (Defs. Mot.; Defs. Mem.), and Plaintiff subsequently filed a motion for leave to amend the TAC, seeking to add fraudulent inducement and due process claims against Moody, (Pl. Mot. to Amend). The Court referred the motions to Judge Tiscione for a report and recommendation. (Order dated Nov. 14, 2016.)

Judge Tiscione recommended that the Court deny Plaintiff's motion to further amend the TAC. (R&R 50.) Judge Tiscione also recommended the Court grant in part and deny in part Defendants' motion, specifically, that the Court (1) DENY: Defendants' motion to dismiss Plaintiff's (a) claims against Court Officers Spinelli and Williams for lack of personal jurisdiction based on failure to effect proper service, (b) state and federal false arrest claims against the court officers, (c) federal excessive force claim against Court Officer Alfieri, (d) state assault and battery claims against the court officers, (e) state malicious prosecution claims against the court officers, and (f) First Amendment retaliation claims against the court officers; (2) GRANT: Defendants' motion to dismiss Plaintiff's (a) federal excessive force claims against Court Officers Spinelli and Williams, (b) federal malicious abuse of the criminal process claims against the court officers, (c) federal malicious prosecution claims against the court officers, (d) federal fabrication of evidence claims against the court officers, (e) federal selective enforcement claims against the court officers, (f) failure to intervene claims against the court officers, (g) unconstitutional defamation claims against the court officers, and (h) federal and state conspiracy claims against the officers; and also (3) GRANT: Defendants' motion to dismiss all of Plaintiff's claims against Moody and dismiss Moody from the action. (R&R 9–52.)

---

*See Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to raise the strongest arguments they suggest").

Defendants filed timely objections, challenging Judge Tiscione's recommendations that the Court: (1) deny Defendants' motion for lack of personal jurisdiction over Court Officers Spinelli and Williams due to the lack of proper service, (2) deny Defendants' motion to dismiss Plaintiff's assault and battery claims against Court Officers Spinelli and Williams, and (3) deny Defendants' motion to dismiss Plaintiff's First Amendment retaliation claims against all three court officers. (Defs. Objs. 3–10.) Plaintiff filed a letter informing the Court that he has no objections to the R&R.[3] (Pl. Letter.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id*.; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec.*

---

[3] Plaintiff filed a response to Defendants' objections on September 20, 2017, which repeats Judge Tiscione's bases for denying Defendants' motion as to lack of jurisdiction over Court Officers Spinelli and Williams for failure to effect proper service, Plaintiff's assault and battery claims against Court Officers Spinelli and Williams, and Plaintiff's First Amendment retaliation claims. (*See* Pl. Opp'n to Defs. Objs., Docket Entry No. 63; R&R 9–14, 36–44.)

*Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Rule 12(b)(5)

Rule 12(b)(5) permits a party to move to dismiss the complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016)); *see also Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant."). A court considers whether the plaintiff has complied with Rule 4, which governs the content, issuance and service of a summons. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Id.* (citation omitted); *accord Khan v. Khan*, 360 F. App'x. 202, 203 (2d Cir. 2010).

### iii. Rule 12(b)(6)

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*,

556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Unopposed recommendations

No party has objected to Judge Tiscione's recommendations that the Court: (1) deny Defendants' motion to dismiss Plaintiff's (a) state and federal false arrest claims against the court officers, (b) federal excessive force claim against Court Officer Alfieri, (c) state assault and battery claim against Court Officer Alfieri, and (d) state malicious prosecution claims against the court officers; (2) grant Defendants' motion to dismiss Plaintiff's (a) federal excessive force claims against Court Officers Spinelli and Williams, (b) federal malicious abuse of the criminal process claims against the court officers, (c) federal malicious prosecution claims against the court officers, (d) federal fabrication of evidence claims against the court officers, (e) federal selective enforcement claims against the court officers, (f) failure to intervene claims against the court officers, (g) unconstitutional defamation claims against the court officers, and (h) federal and state conspiracy claims against the officers; and (3) grant Defendants' motion to dismiss all of Plaintiff's claims against Moody and dismiss Moody from the action. (R&R 9–52; Defs. Objs. 3–10; Pl. Letter.) The Court has reviewed the unopposed portions of the R&R, and,

finding no clear error, the Court adopts Judge Tiscione's unopposed recommendations pursuant

to 28 U.S.C. § 636(b)(1)(C).[4]

### c. Defendants' objections

Defendants object to Judge Tiscione's recommendations that the Court: (1) deny

Defendants' motion for lack of personal jurisdiction over Court Officers Spinelli and Williams

for failure to effect proper service, (2) deny Defendants' motion to dismiss Plaintiff's assault and

---

[4] Judge Tiscione recommended that the Court dismiss Plaintiff's claim for the denial of the right to a fair trial based on fabrication of evidence on the ground that "claims for the denial of a right to a fair trial cannot succeed if there was no trial." (R&R 36 (citing *Nieves v. Fahmy*, No. 15-CV-7297, 2016 WL 6804926, at *4 (E.D.N.Y. Nov. 11, 2016).) The Court declines to dismiss Plaintiff's fabrication of evidence claim on that ground as Second Circuit precedent appears to allow a plaintiff to pursue a denial of the right to a fair trial claim based on fabrication of evidence even when there is no trial. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 126, 130 (2d Cir. 1997) (reversing a district court's dismissal of a fabrication of evidence claim even though "[a]ll charges were dismissed by a pre-trial court order"); *see also Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL 5793741, at *10–11 (S.D.N.Y. Sept. 30, 2016) ("Although some courts have held that a [s]ection 1983 claim for denial of the right to a fair trial requires that a trial have actually been conducted, the Second Circuit in *Ricciuti* and other courts in the district have found otherwise." (first citing *Schiller v. City of New York*, No. 04-CV-10178, 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008); and then citing *Canario v. City of New York*, No. 05-CV-9343, 2006 WL 2015651, at *2-4 (S.D.N.Y. July 12, 2006))).

The Court, however, adopts Judge Tiscione's recommendation that the Court dismiss the fabrication of evidence claim because Plaintiff fails to establish that he suffered a deprivation of liberty. *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (holding that to establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result" (citation omitted)). After Plaintiff received the summons, he was not detained and only appeared once in state court — the hearing at which the charges were dismissed. (TAC ¶¶ 36, 41, 59, 72.) Plaintiff's allegations therefore fail to establish a constitutional deprivation of liberty. *See Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (holding that "the issuance of a pre-arraignment non-felony summons requiring a later court appearance, without further restrictions, does not constitute a . . . seizure" sufficient to establish a constitutional deprivation of liberty); *Arbuckle*, 2016 WL 5793741, at *2–3, *10–11 (finding that a plaintiff failed to establish a constitutional deprivation of liberty where police officers arrested the plaintiff and released him after issuing him a summons, which only required the plaintiff to appear before the state court on three separate occasions before the charges were dismissed).

battery claims against Court Officers Spinelli and Williams, and (3) deny Defendants' motion to dismiss Plaintiff's First Amendment retaliation claims against all three court officers. (Defs. Objs. 3–10.) The Court addresses each of Defendants' objections below.

### i. Failure to effect proper service

Defendants argue that the Court lacks personal jurisdiction over Court Officers Spinelli and Williams because under Rule 4 of the Federal Rules of Civil Procedure, Plaintiff failed to effect proper service on Court Officers Spinelli and Williams and failed to provide good cause for the defective service. (Defs. Objs. 3–5.)

Pursuant to Rule 4(m), a plaintiff is responsible for service of the summons and complaint within ninety days of filing the complaint. Fed. R. Civ. P. 4(c)(1). An individual may be served either by "following state law"[5] or by delivering a copy of the summons and complaint personally to the individual, leaving a copy at the individual's dwelling place with someone of suitable age and discretion who resides there, or delivering a copy to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e).

Rule 4(m) provides that:

> If a defendant is not served within [ninety] days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.* 4(m). "It is clear under the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good cause,'" and "[t]he first clause of Rule 4(m), which makes no mention of good cause, grants discretion to district courts in a backhanded fashion by dictating that

---

[5] New York law authorizes additional methods of service on a person that are not relevant here. *See* N.Y. C.P.L.R. § 308; *id.* § 312-a(a).

they . . . must decide to dismiss . . . or decide not to dismiss. But no criteria for this decision are supplied in the rule itself." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). In determining whether a discretionary extension is appropriate absent good cause, a court considers the following factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by extending the plaintiff's time for service. *See Zankel v. United States*, 921 F.2d 432, 437–38 (2d Cir. 1990) (discussing the discretionary factors in a suit against the United States government); *Jones v. Westchester County*, 182 F. Supp. 3d 134, 145 (S.D.N.Y. 2016) (discussing the discretionary factors in a case involving a non-government defendant); *Fowler v. City of New York*, No. 13-CV-2372, 2015 WL 9462097, at *5 (E.D.N.Y. Dec. 23, 2015) (same); *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases); *see also Soos v. Niagara County*, 195 F. Supp. 3d 458, 467 (W.D.N.Y. 2016); *Howell v. Campbell*, No. 15-CV-3705, 2016 WL 1241529, at *4 (S.D.N.Y. Mar. 23, 2016); *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006).

The Second Circuit has held that when a plaintiff is proceeding *pro se*, district courts should take special care when deciding whether to dismiss a complaint for failure of proper service because "*pro se* plaintiffs should be granted special leniency regarding procedural matters." *Thrall v. Cent. N.Y. Reg'l Trans. Auth.*, 399 F. App'x 663, 666 (2d Cir. 2010) (quoting *Lesane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001)); *see also Jaiyeola v. Carrier Corp.*, 73 F. App'x 492, 493–94 (2d Cir. 2003) (reversing a district court's decision to dismiss the *pro se* plaintiff's complaint for failure of proper service). The Second Circuit explained that:

> Rule 4 of the Federal Rules is to be construed liberally "to further
> the purpose of finding personal jurisdiction in cases in which the

party has received actual notice."  We further noted that "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained*."

*Jaiyeola*, 73 F. App'x at 494 (quoting *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986)).

Here, although Plaintiff provides no arguments regarding good cause for his failure to effect proper service on Court Officers Spinelli and Williams, the discretionary factors weigh in favor of granting Plaintiff leave to effect proper service on Court Officers Spinelli and Williams, especially considering Plaintiff's *pro se* status.  When Plaintiff filed the Complaint, Plaintiff failed to serve Defendants with a copy of the summons and Complaint.  Plaintiff subsequently filed an Amended Complaint, (Am. Compl.), after which filing Judge Bloom ordered Plaintiff to serve Defendants with a copy of the summons and Amended Complaint, (Order dated Nov. 9, 2015, Docket Entry No. 10).  Plaintiff mailed a copy of the summons and Amended Complaint to the state court addressed to Court Officer Spinelli.  (Executed Summonses dated Dec. 18, 2015, at 3, Docket Entry No. 14.)[6]

With the Court's permission, Plaintiff subsequently filed a Second Amended Complaint and a TAC.  (SAC; TAC.)  In the TAC, Plaintiff added Court Officer Williams as a Defendant. (TAC ¶ 17.)  Plaintiff served Defendants' counsel with a copy of the TAC, (Affirmation of Service of TAC, annexed to TAC as Ex. 1), but failed to serve the summons and TAC on any of the Defendants.  After Plaintiff filed the TAC, Defendants' counsel briefed a motion to dismiss on behalf of Defendants, including Court Officers Spinelli and Williams, which motion contained jurisdictional and substantive arguments as to why the Court should dismiss Plaintiff's claims against, among others, Court Officers Spinelli and Williams.  (*See* Defs. Mot.; Defs.

---

[6]  Because the Executed Summonses are not consecutively paginated, the Court refers to the electronic document filing system ("ECF") pagination.

Letter dated June 30, 2016, Docket Entry No. 36.)  To determine whether the Court should allow

Plaintiff an extension of time to effect proper service on Court Officers Spinelli and Williams,

the Court considers the factors discussed above.

### 1.  Statute of limitations

If dismissal of an action without prejudice for failure of proper service would bar the

plaintiff's ability to refile the action because the statute of limitations has run, such

circumstances weigh in favor of extending the plaintiff's time to effect proper service.  *Zapata*,

502 F.3d at 198 (holding that "extension might be justified where [the] statute of limitations

would bar the refiling of an action"); *Zankel*, 921 F.2d at 437–38 (holding that an extension of

time to effect proper service was warranted where the "[p]laintiffs suffered extreme prejudice

from the dismissal of their complaint, since it appears that their action is now barred by the

statute of limitations").  The statute of limitations for section 1983 claims brought in a federal

court in New York is three years from the date the underlying constitutional violation occurred.

*See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015).  The statute of limitations for state law

claims of false arrest, malicious prosecution, assault and battery under New York law is one year

from the date of the alleged violations.  *See Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016)

(citing N.Y. C.P.L.R § 215(3)).

Here, as to Court Officers Spinelli and Williams, Plaintiff's claims primarily are based on

conduct that occurred on September 11, 2014.  (TAC ¶¶ 18–44.)  Plaintiff filed this action on

September 10, 2015.  (Compl 1.)  The statute of limitations ran on September 11, 2017, for

Plaintiff's section 1983 claims and on September 11, 2015, for Plaintiff's state law claims.

Dismissal of the action without prejudice would therefore bar Plaintiff's ability to refile the

action as the statute of limitations has run for both the federal and state law claims, which

circumstances favor granting Plaintiff an extension of time to effect proper service on Court Officers Spinelli and Williams. *See Zankel*, 921 F.2d at 437–38 (holding that the running of the statute of limitations weighed in favor of granting the plaintiffs an extension of time to effect proper service); *Jones*, 182 F. Supp. 3d at 145 n.7 ("[M]ost courts [] consider the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." (citation and internal quotation marks omitted)).

### 2. Actual notice

A defendant's actual notice of claims against the defendant weighs in favor of granting the plaintiff an extension of time to effect proper service. *See Jaiyeola*, 73 F. App'x at 494 ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." (citation and internal quotation marks omitted)). Although it is not clear that Court Officers Spinelli and Williams have actual notice of the action, the New York Attorney General's Office has actual notice of the claims and has moved to dismiss the claims against Court Officers Spinelli and Williams. (*See* Affirmation of Service of TAC; Defs. Letter dated June 30, 2016; Defs. Mot.) This factor therefore weighs in favor of granting an extension of time to allow proper service of process. *See Jones*, 182 F. Supp. 3d at 144 (finding that the notice factor weighed in favor of granting the plaintiff an extension of time to serve because "while there is no competent evidence . . . that [the defendants] had *actual notice* of the claims against them, defense counsel has engaged in motion practice on their behalf" (collecting cases)); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 599 (E.D.N.Y. 2013) ("The second factor similarly militates in favor of granting plaintiff an extension. Defendant undoubtedly had actual notice of the issues underlying the Complaint.").

### 3. Concealment

If a defendant does not attempt to conceal the defect in service, such inaction weighs against granting the plaintiff an extension to effect proper service. *See Jones*, 182 F. Supp. 3d at 145; *George*, 221 F. Supp. 3d at 436; *Fowler*, 2015 WL 9462097, at *7. Here, this factor weighs in favor of Defendants as they did not attempt to conceal the defect in service — they informed Plaintiff of their intention to move to dismiss the claims in the Amended Complaint against Court Officer Spinelli based on failure of proper service and, shortly after Plaintiff filed the TAC, moved to dismiss the claims against Court Officers Spinelli and Williams based on failure of proper service. (Defs. Letter dated Jan. 19, 2016, Docket Entry No. 16; Defs. Mot. 6–8); *see George*, 221 F. Supp. 3d at 436 (finding that the concealment factor weighed in the defendants' favor because the defendants "sought dismissal of the [a]mended [c]omplaint under Rule 12(b)(5) approximately one month after receiving the summons and [a]mended [c]omplaint"); *cf. Zankel*, 921 F.2d at 437 (holding that because the defendants "did not disclose the special character of [the] plaintiffs' defective service until . . . 14 months after the suit was commenced," which was not "within the statute of limitations period" and moved to dismiss "after the expiration of this period," such concealment weighed in favor of granting the plaintiffs an extension of time to effect proper service).

### 4. Prejudice

A defendant's failure to show that the defendant would be prejudiced if the court grants the plaintiff an extension of time to effect proper service weighs in favor of granting an extension. *See Zankel*, 921 F.2d at 437–38 (holding that a district court should have granted the plaintiffs an extension of time to effect proper service because, *inter alia*, the defendants "suffered no prejudice from the technical defect in service"); *Jones*, 182 F. Supp. 3d at 145

(collecting cases). While Court Officers Spinelli and Williams do not argue any prejudice that they would suffer if the Court granted Plaintiff an extension of time to effect proper service, (*see* Defs. Objs. 3–5), under the circumstances here, there is little prejudice, if any, to Court Officers Williams and Spinelli because they are both employed by New York State and represented by the New York State Attorney General's Office, which has been served with process and is actively defending the litigation on behalf of Moody and Court Officer Alfieri as well as Court Officers Spinelli and Williams. *See Jones*, 182 F. Supp. 3d at 144 ("[T]he unserved [d]efendants do not cite any prejudice that has resulted from their failure to be served. Indeed, in cases like this, where all defendants are employed by a common employer . . . , it is unclear what prejudice [the] unserved defendants may suffer." (citations omitted) (collecting cases)); *Frederick v. City of New York*, No. 13-CV-897, 2016 WL 8711395, at *8 (E.D.N.Y. Mar. 25, 2016) (noting the lack of prejudice to [the] late-served individual defendants where counsel for the City of New York moved to dismiss the claims against the late-served defendants and there were no unique defenses as to those two defendants); *Tabb v. Rosemary*, No. 12-CV-1520, 2014 WL 240266, at *7 (S.D.N.Y. Jan. 22, 2014) (finding "little, if any, prejudice to the . . . as-yet unserved defendants occasioned by the delay in serving them," because the defendants "are all DOC employees and will presumably be represented by common counsel" and an "equal[ly-]interest[ed]" individual co-defendant had been "vigorously litigat[ing]" the action).

Accordingly, based on the fact that three of the four factors weigh in Plaintiff's favor, and the fact that Plaintiff is proceeding *pro se*, the Court grants Plaintiff an extension of time to effect proper service on Court Officers Spinelli and Williams. *See Thrall*, 399 F. App'x at 666 (holding that "*pro se* plaintiffs should be granted special leniency regarding procedural matters" (citation omitted)); *Jones*, 182 F. Supp. 3d at 145 ("The Court acknowledges that factors one and three

weigh against an extension . . . [h]owever, factors two and four, coupled with [the] [p]laintiff's *pro se* status, weigh strongly in favor of an extension."); *Harrison v. New York*, 95 F. Supp. 3d 293, 320 (E.D.N.Y. 2015) (finding that a lack of concealment at the third factor "alone is not sufficient to offset other factors weighing in [the] [p]laintiff's favor").  Plaintiff shall serve Court Officers Spinelli and Williams within thirty (30) days of the date of this Memorandum and Order.  If Plaintiff fails to effect proper service on Court Officers Spinelli and Williams, they may renew their motion to dismiss for failure of proper service.[7]

---

[7]  Although the Court grants Plaintiff an extension of time to effect proper service on Court Officers Spinelli and Williams, such service has not yet been effected and therefore the Court lacks personal jurisdiction over Court Officers Spinelli and Williams until the time that Plaintiff effects proper service on them.  *See Dynegy Midstream Servs. v. Trammochem,* 451 F.3d 89, 94 (2d Cir. 2006) ("Before a federal court may exercise personal jurisdiction over a defendant" and address the merits of the claims against the defendant, "the procedural requirement of service of summons must be satisfied." (citation and internal quotation marks omitted)).

However, the Court addresses Defendants' arguments as to the merits of the claims against Court Officers Spinelli and Williams because the Court extended Plaintiff's time to effect proper service and Defendants have briefed the merits of the claims against Court Officers Spinelli and Williams, and, therefore, it would be a waste of the parties' and the Court's time for the Court to decline to address the merits of those claims until Plaintiff effects proper service. *See United States v. Vazquez*, 145 F.3d 74, 80 & n.3 (2d Cir. 1998) (addressing the merits of the claims even though personal jurisdiction was not established due to lack of proper service because "the failure timely to serve a summons and complaint on the opposing party is excusable," and therefore it was "not an exercise of the hypothetical jurisdiction of the sort disapproved of by the Supreme Court" (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92–102 (1998))); *Howell v. Campbell*, No. 15-CV-3705, 2016 WL 1241529, at *4 (S.D.N.Y. Mar. 23, 2016) (granting an extension of time to effect proper service and then addressing the merits of the case); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[P]ersonal jurisdiction . . . is [not] fundamentally preliminary in the sense that subject-matter jurisdiction is, for [it is a] personal privilege[] of the defendant, rather than [an] absolute stricture[] on the court."); *F5 Capital v. Pappas*, 856 F.3d 61, 81 (2d Cir. 2017) (holding that, whenever possible, courts should resolve "all . . . disputes arising from the same core of facts and thereby conserve judicial resources").

If Plaintiff fails to effect proper service on Court Officers Spinelli and Williams within the time specified by the Court and Defendants renew their motion to dismiss for lack of personal jurisdiction over Court Officers Spinelli and Williams, the Court will vacate its decision as to the merits of Plaintiff's claims against Court Officers Spinelli and Williams and dismiss

## ii.    State law assault and battery claims

Defendants argue that because the federal excessive force claims against Court Officers Spinelli and Williams fail, the Court should dismiss the state law assault and battery claims against Court Officers Spinelli and Williams.  (Defs. Objs. 8–10.)

Under New York law, "assault is an intentional placing of another person in fear of imminent harmful or offensive contact" and a "battery is an intentional wrongful physical contact with another person without consent."  *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (citing *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (App. Div. 1998)); *see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (citing *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979)); *Rucks v. City of New York*, 96 F. Supp. 3d 138, 153 (S.D.N.Y. 2015).  If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery.  *See Rucks*, 96 F. Supp. 3d at 153 ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force used would be deemed reasonable if applied during a lawful arrest.  In fact, where an arrest is unlawful and without consent, the use of force in an arrest *must* give rise to a claim for assault and battery. " (internal quotation marks omitted) (first quoting *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001); and then citing *Johnson v. Suffolk Cty. Police Dep't*, 665 N.Y.S.2d 440, 441 (App. Div. 1997))); *Biswas v.*

---

those claims without prejudice for lack of personal jurisdiction. *See Kelson v. Paterson*, 542 F.3d 281, 288 n.14 (2d Cir. 2008) (holding that "a court may at any time dismiss for lack of jurisdiction"); *Jones v. Westchester County*, 182 F. Supp. 3d 134, 145 (S.D.N.Y. 2016) (granting plaintiff an extension of time to effect proper service, addressing the merits of the plaintiff's claims and explaining that "[f]ailure to fulfill his obligation . . . [regarding] [s]ervice may result in the dismissal of the [a]ction"); *Adetuyi v. U.S. Power Generating Co.*, No. 10-CV-8750, 2012 WL 3242318, at *1–2 (S.D.N.Y. Aug. 9, 2012) (finding that the plaintiff's complaint failed to state a claim because the plaintiff failed to effect proper service on the defendant, but allowing the plaintiff to effect proper service and explaining that "if [the] [p]laintiff fails to effect service by th[e] date specified, the [c]omplaint . . . shall be dismissed").

*City of New York*, 973 F. Supp. 2d 504, 531 (S.D.N.Y. 2013) ("If an arrest is unlawful, an arresting police officer commits a battery when he or she touches the arrestee, including during the application of handcuffs." (citing *Budgar v. State*, 414 N.Y.S.2d 463, 466 (Ct. Cl. 1979))); *Mesa v. City of New York,* No. 09-CV-10464, 2013 WL 31002, at *32 (S.D.N.Y. Jan. 3, 2013) ("In New York, when there is no probable cause for an arrest, all force employed during that arrest is unlawful."); *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the forced used would be deemed reasonable if applied during a lawful arrest." (quoting *Sulkowska*, 129 F. Supp. 2d at 294)).

Plaintiff alleges that on September 11, 2014, Court Officer Williams threatened to punch Plaintiff in the face simply because Plaintiff told Court Officer Williams not to "get an attitude" based on the length of time it was taking Plaintiff to read the form to check his recorder at the security desk.  (TAC ¶¶ 19–20.)  Court Officer Spinelli approached during Plaintiff's exchange with Court Officer Williams and inquired about the issue between the two, to which Court Officer Williams responded that Plaintiff "was causing trouble" because he did not "want to sign the paper for the recorder."  (*Id.* ¶¶ 24–25.)  After Plaintiff denied that he was causing any trouble, Court Officer Spinelli "grabbed Plaintiff by his arm and dragged Plaintiff outside" of the courthouse.  (*Id.* ¶¶ 25–26.)  While outside of the courthouse, Plaintiff had an exchange with Court Officer Alfieri, which led to Court Officer Alfieri pushing Plaintiff against a wall and threatening to handcuff Plaintiff if Plaintiff did not reenter the courthouse to receive a summons for disorderly conduct.  (*Id.* ¶¶ 26–36.)

Plaintiff returned to the state court on July 16, 2015, "for [a] litigation purpose." (*Id.* ¶ 46.)  As Plaintiff was leaving the state court, he saw Court Officer Spinelli and told Court

Officer Spinelli "you assaulted me the other day and [] violated my [Fourth] [A]mendment rights. You lied on the summons . . . [and] [i]t took me the entire day to get it dismissed." (*Id.*) Court Officer Spinelli responded by taking out his firearm and "hold[ing] it against his [own] stomach." (*Id.* ¶ 47.) Plaintiff walked away because he was in "fear[] for his safety." (*Id.*)

Defendants do not contest Judge Tiscione's recommendation that the court officers, including Court Officers Spinelli and Williams, falsely arrested Plaintiff on September 11, 2014. (R&R 15–23; Defs. Objs. 8–10.) Defendants therefore have conceded that Plaintiff's allegations as to his false arrest claims are sufficient to state a claim upon which relief may be granted.[8] *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007) (holding that by "fail[ing] to object the magistrate judge's" recommendation, the defendants' "conceded the issue" and "waive[d] any further judicial review of the point" (citation omitted)). Nevertheless, Defendants argue that the Court must dismiss the assault and battery claims against Court Officers Spinelli and Williams because Plaintiff's excessive force claims against Court Officers Spinelli and Williams fail. (Defs. Objs. 8–10.)

Defendants overlook the critical difference between a federal excessive force claim and New York state law assault and battery claims against officers for actions that occur in the course of an arrest. Under federal law, when an officer arrests someone without probable cause, the unlawful arrest does not automatically give rise to an excessive force claim. *See County of Los Angeles v. Mendez*, 581 U.S. ---, ---, 137 S. Ct. 1539, 1547–48 (May 30, 2017) (Federal law does not dictate "that any Fourth Amendment violation that is connected to a reasonable use of force

---

[8] To be clear, the Court is not finding that Defendants are liable on Plaintiff's false arrest claims; the Court only finds that by not objecting to the R&R, Defendants have conceded that Plaintiff's allegations as to his false arrest claims are sufficient to state a claim upon which relief may be granted.

should create a valid excessive force claim. Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." (citation and internal quotation marks omitted)). However, as discussed above, New York law holds that any force used during the course of an unlawful arrest gives rise to assault and battery claims against the arresting officers.[9] *See, e.g.*, *Rucks*, 96 F. Supp. 3d at 153 (explaining that, under New York law, "where an arrest is unlawful and without consent, the use of force in an arrest *must* give rise to a claim for assault and battery" (citing *Johnson*, 665 N.Y.S.2d at 441)). Accordingly, because Plaintiff has established a false arrest claim against Court Officers Spinelli and Williams, under New York law, Plaintiff has established assault and battery claims against Court Officers Spinelli and Williams. *See Rucks*, 96 F. Supp. 3d at 153; *Biswas*, 973 F. Supp. 2d at 530–31; *5 Borough Pawn, LLC.*, 753 F. Supp. 2d at 201.

### iii. First Amendment retaliation claim

Defendants argue that the Court should dismiss Plaintiff's First Amendment retaliation claims because Plaintiff was not retaliated against for engaging in protected speech and,

---

[9] In support of their argument that Plaintiff's state law assault and battery claims against Court Officers Spinelli and Williams must fail because the federal excessive force claims against them fail, Defendants rely on *Pelayo v. Port Authority*, 893 F. Supp. 2d 632, 641–42 (S.D.N.Y. 2012), and *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006). (Defs. Objs. 9–10.) Both *Pelayo* and *Pierre-Antoine* were cases where the officers lawfully arrested the plaintiffs, but used excessive force in the course of the lawful arrests. *See Pelayo*, 893 F. Supp. 2d at 641 ("Because [the plaintiff] has failed to produce evidence from which a reasonable juror could conclude that the [] defendants falsely arrested her, her federal and state claims . . . based on the alleged false arrest fail as a matter of law."); *Pierre-Antoine*, 2006 WL 1292076, at *4 ("It is undisputed . . . that [the plaintiff] possessed a weapon in open view, at least up until the time the struggle began, and that he resisted [the lawful] arrest. Some use of force, therefore, was clearly justified."). Therefore, *Pelayo* and *Pierre-Antoine* are distinguishable from this case.

alternatively, if Plaintiff's speech was protected, the speech occurred in a non-public forum. (Defs. Objs. 6–8.)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused an injury. *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted); *see also Maco v. Baldwin Union Free Sch. Dist.*, --- F. Supp. 3d ---, ---, 2017 WL 1373425, at *3 (E.D.N.Y. Apr. 13, 2017) ("Private citizens alleging retaliation for their criticism of public officials are generally required to show that they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in actual chilling of their exercise of their constitutional right to free speech." (citation and internal quotation marks omitted)).

### 1. Protected speech

Defendants' argument that Plaintiff's speech was not protected implicates three issues — the nature of the forum, the content of the speech and the government's ability to restrict the content of speech based on the forum. (Defs. Objs. 6–8.) The Court addresses each below.

Determining whether an individual's speech is protected is largely dependent on the nature of the forum in which the speech occurs. *See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011) ("The level of scrutiny applied to a restriction on speech depends upon the nature of the forum in which the speech occurs."); *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 691–92 (2d Cir. 1991) ("Government may [] properly regulate [] access" to its buildings to engage in expressive speech "depending on the nature of the property at issue." (citation omitted)). Courts in the Second Circuit have held that comments criticizing

the conduct of state law enforcement officers that occur in a public forum constitute expressive speech, which is protected under the First Amendment. *See Kuck v. Danaher*, 600 F.3d 159, 167–68 (2d Cir. 2010) (holding that the criticism of the acts of a state department of public safety officer constituted protected speech); *Gogol v. City of New York*, No. 15-CV-5703, 2017 WL 3449352, at *9 (S.D.N.Y. Aug. 10, 2017) (finding that the plaintiff's statements criticizing a police officer for failing to exercise "courtesy and respect" constituted protected speech); *Thomas v. City of New York*, No. 05-CV-6449, 2008 WL 3456173, at *5 (S.D.N.Y. Aug. 12, 2008) (finding disputed issues of fact as to whether the plaintiff's speech was protected where the plaintiff made potentially critical statements about the officer's conduct prior to the officer issuing the plaintiff a summons). However, a government owned building, such as a courthouse, is a non-public forum in which the government may restrict an individual's speech so long as the restriction is not aimed at suppressing the content of the speech and is reasonably related to the forum's purpose. *See Susman v. Crawford*, 548 F.3d 195, 199 (2d Cir. 2008) ("[R]estrictions on speech in non-public fora must be reasonable in light of the purpose of the forum and reflect a legitimate government concern." (citation and internal quotation marks omitted)); *Huminski v. Crosones*, 396 F.3d 53, 91 (2d Cir. 2005) (holding that "the interior of a courthouse is not a public forum"); *Travis*, 927 F.2d at 692 ("In nonpublic forums, government may enforce both time, place, and manner restrictions and reasonable content-based regulations on speech. However, it may not suppress expression merely because it opposes the speaker's point of view." (citation and internal quotation marks omitted)).

Plaintiff presents sufficient allegations to establish that he engaged in protected speech and that the court officers' actions in response were based on the content of his speech, rather than a legitimate government concern. When Court Officer Williams informed Plaintiff that he

had to check his recorder at the security desk, Court Officer Williams gave Plaintiff a property check-in form to fill out. (TAC ¶¶ 18–19.) Court Officer Williams rushed Plaintiff to either sign the form or leave the courthouse. (*Id.* ¶ 19.) Plaintiff told Court Officer Williams that he should not "get an attitude" due the length of time it was taking Plaintiff to read the form, and after Court Officer Williams responded by threatening Plaintiff, Plaintiff asked to speak to a supervising court officer. (*Id.* ¶¶ 19–20.) Court Officer Williams then told Court Officer Spinelli that Plaintiff was causing trouble, which resulted in Court Officer Spinelli dragging Plaintiff out of the courthouse by his arm. (*Id.* ¶¶ 24–25.) Once outside the courthouse, Plaintiff asked Court Officer Spinelli to call a supervising court officer. (*Id.* ¶¶ 26.) Court Officer Spinelli called Court Officer Alfieri. (*Id.* ¶ 27.) After Court Officer Alfieri arrived, Court Officer Spinelli told Court Officer Alfieri that Plaintiff was causing trouble. (*Id.* ¶¶ 27–28.) Court Officer Alfieri instructed Court Officer Spinelli to reenter the courthouse with Plaintiff and issue Plaintiff a summons for disorderly conduct, and when Plaintiff replied that he wanted to go home, Court Officer Alfieri pinned Plaintiff against the wall and told him that he would be handcuffed and forced to reenter the courthouse to receive a summons if he did not comply. (*Id.* ¶¶ 28–29.) Plaintiff complied, reentered the courthouse and received a summons for disorderly conduct. (*Id.* ¶¶ 29, 36.)

Based on the foregoing facts, the Court rejects Defendants' argument that Plaintiff's speech was not protected. Making reasonable inferences in Plaintiff's favor, Plaintiff's comments that Court Officer Williams should not "get an attitude" and his requests to speak to a supervising officer are criticisms of the court officers' conduct that qualify as protected speech. *See Gogol*, 2017 WL 3449352, at *9 (finding that the plaintiff's statements criticizing a police officer for failing to exercise "courtesy and respect" constituted protected speech); *Thomas*, 2008

WL 3456173, at *5 (finding a disputed issue of fact as to whether the plaintiff's speech was protected where the plaintiff made potentially critical statements about the officer's conduct prior to the officer issuing the plaintiff a summons). In addition, Defendants present no arguments as to how the court officers' responses to Plaintiff's comments were reasonably related to a legitimate government concern pertaining to the purpose of the forum, and not just retaliatory acts based on the content of Plaintiff's speech. *See Zalaski v. City of Hartford*, 462 F. App'x 13, 15 (2d Cir. 2011) ("If [the defendant-officer's] motive for the arrest was message suppression rather than content-neutral law enforcement, no reasonable officer could think that his actions did not violate the First Amendment, regardless of the forum." (citing *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y., N.Y. & Vicinity v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 544–46 (2d Cir. 2002))). Accordingly, the Courts finds that Plaintiff's comments were protected speech and the court officers' actions in response were based on the speech's content.

### 2. Causation

Defendants argue that even assuming Plaintiff's comments were protected speech, Plaintiff fails to establish that the allegedly retaliatory seizure was motivated or substantially caused by Plaintiff's protected speech because there were "intervening events" between the protected speech and the seizure. (Defs. Objs. 7–8.)

The second element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions were motivated or substantially caused" by the plaintiff's First Amendment activity. *Dorsett*, 732 F.3d at 160. To establish a "causal link between [] protected" speech and [a] retaliatory action, a plaintiff may, "of course, rely on circumstantial evidence to support the required inference of retaliatory intent." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) (citation omitted); *Berg v. Kelly*, No. 12-CV-3391, 2016 WL 4257525, at *4

(S.D.N.Y. Aug. 10, 2016) ("Circumstantial evidence of retaliatory intent may supply the causal connection between a plaintiff's protected speech and a defendant's [retaliatory] action." (citing *Gronowski*, 424 F.3d at 293)). Such circumstantial evidence includes a close temporal relationship between the protected speech and the retaliatory action. *See Hampshire Recreation, LLC v. Village of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (holding, in First Amendment retaliation case, that a "causal connection [is] established where protected activity is closely follow in time by [an] adverse action" (internal quotation marks omitted) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001))); *Gogol*, 2017 WL 3449352, at *9 (finding, in a First Amendment retaliation case, that "temporal proximity is strong evidence of improper intent" (citation omitted)).

Plaintiff's allegations establish sufficient circumstantial evidence of retaliatory intent based on temporal proximity. Plaintiff's allegations show the court officers' retaliatory intent based on the following sequence of events: Plaintiff commented on Court Officer Williams' negative attitude toward Plaintiff while Plaintiff was reading the check-in form, (TAC ¶ 19); Court Officer Williams responded with a threat that he will "punch [Plaintiff] in the face," (*id.* ¶ 20); Plaintiff requested to speak to Court Officer Williams' supervising officer, (*id.* ¶ 24); Court Officer Williams told Court Officer Spinelli that Plaintiff was "causing trouble," (*id.*); Court Officer Spinelli dragged Plaintiff outside of the courthouse, (*id.* ¶ 25); Plaintiff requested to speak to Court Officer Spinelli's supervising officer, (*id.* ¶ 26); Court Officer Spinelli radioed Court Officer Alfieri, who arrived shortly thereafter, (*id.* ¶ 27); Court Officer Spinelli told Court Officer Alfieri that Plaintiff was "causing trouble," (*id.* ¶ 28); Court Officer Alfieri instructed Court Officer Spinelli to issue Plaintiff a summons for disorderly conduct, (*id.*); Plaintiff said that he will go home instead of receiving a summons, (*id.*); Court Officer Alfieri pinned Plaintiff

to a wall and then told him he will be handcuffed if he did not reenter the courthouse to receive the summons, (*id.* ¶ 29); Plaintiff complied, reentered the courthouse and received a summons for disorderly conduct, (*id.* ¶¶ 29, 36). Contrary to Defendants' assertions of "intervening events" between the protected speech and the seizure, Plaintiff's allegations establish a close temporal relationship between Plaintiff's protected speech and the unlawful seizure. *See Gogol*, 2017 WL 3449352, at *9 (finding that retaliatory intent was established because "there was exceedingly close temporal proximity between [the] [p]laintiff's statement and the alleged retaliation" where an officer arrested the plaintiff shortly after she stated that the officer should exercise "courtesy and respect"); *Thomas*, 2008 WL 3456173, at *5 (finding sufficient indicia of retaliatory intent where the defendant police officers questioned the plaintiff and subsequently arrested the plaintiff based on what appeared to be their displeasure with comments the plaintiff made during the questioning).

### 3. Injury

The third element of a First Amendment retaliation claims requires a plaintiff to show that "the defendant's actions caused an injury." *Dorsett*, 732 F.3d at 160. In the context of a First Amendment retaliation claim based on a plaintiff's speech to an officer that led to a seizure, a plaintiff cannot establish an injury if the seizure was based on probable cause. *See Goldoner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011) (holding that "probable cause is as a complete defense to a claim of retaliatory arrest" (citing *Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d Cir. 1992))); *see also Abeyta v. City of New York*, 588 F. App'x 24, 25 (2d Cir. 2014) ("Because . . . defendants had probable cause to detain plaintiff, . . . plaintiff's challenge to the [d]istrict [c]ourt's dismissal of his First Amendment retaliation claim is without merit." (citation omitted)). If, however, the seizure was not supported by probable cause, the seizure satisfies the

injury element of a First Amendment retaliation claim. *See Zalaski*, 462 F. App'x at 15 (affirming a district court's decision denying summary judgment as to the plaintiff's First Amendment retaliation claims because of disputed issues of fact regarding probable cause to arrest); *Gogol*, 2017 WL 3449352, at *9 ("Since a reasonable factfinder . . . could find that [the plaintiff] was arrested and charged with . . . disorderly conduct in retaliation for the exercise of her First Amendment rights, she has demonstrated injury sufficient to survive summary judgment."); *Berg*, 2016 WL 4257525, at *4 (finding that "as to the third element, the alleged injury is the detention itself, which clearly constitutes a concrete harm" for "a claim for First Amendment retaliation"); *Adams v. City of New York*, No. 15-CV-6741, 2016 WL 1169520, at *4 (S.D.N.Y. Mar. 22, 2016) (denying the "defendants' motion to dismiss [the plaintiff's] First Amendment claim" because the plaintiff "ha[d] a plausible claim that his arrest was not supported by probable cause or arguable probable cause"); *Thomas*, 2008 WL 3456173, at *5 (denying the defendants' motion for summary judgement as to the plaintiff's First Amendment retaliation claim because there were disputed issues of fact as to probable cause).

Defendants do not argue that Plaintiff failed to establish an injury, and indeed, based on the foregoing authority and considering that Defendants conceded that Plaintiff's allegations as to his false arrest claims against the court officers are sufficient to state a claim,[10] (*see* R&R 15–23; Defs. Objs.), such an argument would be meritless. Therefore, the Court finds that Plaintiff establishes the injury element.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim.

---

[10] *See* note 8, *supra*.

### III.  Conclusion

For the foregoing reasons, the Court adopts the R&R in its entirety.  The Court denies Plaintiff's motion to amend.  The Court (1) GRANTS: Defendants' motion to dismiss Plaintiff's (a) federal excessive force claims against Court Officers Spinelli and Williams, (b) federal malicious abuse of the criminal process claims against the court officers, (c) federal malicious prosecution claims against the court officers, (d) federal fabrication of evidence claims against the court officers, (e) federal selective enforcement claims against the court officers, (f) failure to intervene claims against the court officers, (g) unconstitutional defamation claims against the court officers, and (h) federal and state conspiracy claims against the officers; and (2) DENIES: Defendants' motion to dismiss (a) Plaintiff's claims against Court Officers Spinelli and Williams for lack of personal jurisdiction, (b) state and federal false arrest claims against the court officers, (c) federal excessive force claim against Court Officer Alfieri, (d) state assault and battery claims against the court officers, (e) state malicious prosecution claims against the court officers, and (f) First Amendment retaliation claims against the court officers.

The Court grants Plaintiff an extension time to effect proper service on Court Officers Spinelli and Williams.  Plaintiff shall properly serve Court Officers Spinelli and Williams within thirty (30) days of the date of this Memorandum and Order and file proof of such service with the Clerk of Court.  If Plaintiff fails to effect proper service on Court Officers Spinelli and Williams within the time specified, Defendants may renew their motion to dismiss for failure of proper service as to Court Officers Spinelli and Williams.

The Court dismisses all of Plaintiff's claims against Moody and dismisses her from the action.  The Clerk of Court is directed to amend the docket accordingly.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 26, 2017
        Brooklyn, New York