**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
PRASANNA GOONEWARDENA,

                    Plaintiff,                       <u>**REPORT AND RECOMMENDATION**</u>

    -against-                              **15-CV-5239 (MKB) (ST)**

LOUIS SPINELLI et al.,

                    Defendants.
-------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      *Pro se* plaintiff, Prasanna Goonewardena, commenced this litigation under 42 U.S.C. §

1983 and relevant state laws alleging instances of civil rights and torts violations occurring at or

near Supreme Court, Queens County (the "Courthouse"). The defendants, Officer Louis Spinelli,

Sergeant James Alfieri, and Officer Shawn Williams (collectively, "Defendants") were serving

as New York State Court Officers during the times relevant to this action.[1] Pending before this

Court are cross-motions for summary judgment filed by both parties in this action. *See* ECF Nos.

158, 165. The Honorable Judge Margo K. Brodie referred these motions to me for a Report and

Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, I

respectfully recommend that Defendants' Motion for Summary Judgment be GRANTED in part

and DENIED in part, and that Plaintiff's Motion for Summary Judgment be DENIED in its

entirety.

---

[1]      Officer Spinelli and Sergeant Alfieri are currently retired. Spinelli Aff. ¶ 1; Alfieri Aff. ¶ 1.

# BACKGROUND

## A.    Procedural Background

Plaintiff filed the initial complaint on September 10, 2015, followed by three amended complaints.[2] *See* Third Amended Complaint ("TAC"), ECF No. 35; *see also* ECF Nos. 1, 8, 26. Defendants filed a Motion to Dismiss the action on September 29, 2016. *See* ECF No. 42. On September 26, 2017, the District Court adopted an R&R dismissing certain claims while allowing the following claims to survive: (a) state and federal false arrest claims against all Defendants, (b) First Amendment retaliation claims against all Defendants, (c) federal excessive force claim against Defendant Alfieri, (d) state assault and battery claims, and (e) state malicious prosecution claims against all Defendants. ECF No. 64.[3]

On February 8, 2019, Defendants served their Motion for Summary Judgment upon Plaintiff. ECF No. 151. On March 14, 2019, Plaintiff cross-moved for summary judgment against Defendants. ECF No. 158. Parties' cross-motions for summary judgment have been fully briefed and received by this Court.

## B.    Factual Record

### 1.    September 11, 2014 Incident and Issuance of the Summons

On September 11, 2014, Plaintiff entered the Queens County Courthouse ("Courthouse") to use the library. *See* Declaration of Monica Hanna ("Hanna Decl.") Ex. A ("Pl.'s Dep.") 51:10, ECF No. 171. At the lobby, he encountered Defendant Officer Williams who was conducting

---

[2]    Plaintiff added claims and defendants in his amended complaints. *See* ECF Nos. 1, 8, 26, 35. The Third Amended Complaint identified and named four (4) defendants: Louis Spinelli, James Alfieri, Shawn Williams, and Angela Moody. TAC, ECF No. 35. The claims against Angela Moody were dismissed by this court's order on Defendants' Motion to Dismiss. ECF No. 64.

[3]    On November 14, 2016, Hon. Judge Brodie referred the Defendants' Motion to Dismiss and Plaintiff's Motion to Amend to me for a Report and Recommendation. The Report and Recommendation (ECF No. 57) was adopted in its entirety. ECF No. 64.

security screenings at one of the security checkpoints behind the magnetometer. *See* Defendants'
56.1 Statement ("Defs.' 56.1") ¶ 12, ECF No. 166; Defendants' Responses to Plaintiff's 56.1
Statement ("Defs.' Resp. Pl.'s 56.1") ¶ 2, ECF. No 176. Plaintiff was carrying a tape recorder
inside his backpack, and he was informed by Officer Williams that the recorder must be
vouchered, as it is prohibited inside the Courthouse. Plaintiff's Response to Defs.' 56.1 ("Pl.
Resp. to Defs.' 56.1") ¶¶ 21-25, ECF No. 158-3; Defs.' 56.1 ¶¶ 21-25. Plaintiff and Defendants
sharply dispute the interactions that transpired thereafter.

*Plaintiff's Version of the Facts*

According to Plaintiff, he was taking time to read the voucher form when Officer
Williams impatiently asked whether he intends to sign the form. *See* Plaintiff's Affidavit ("Pl.
Aff.") ¶ 5, ECF No. 158-2; Defs.' 56.1 ¶ 27; Pl.'s Resp. to Defs.' 56.1 ¶ 27. Plaintiff observed
that the Courthouse lobby was free of any "traffic at that time." *See* Pl.'s Dep. 62:25-63:10; 65:9-
12.  Plaintiff continued, "I want to read what I am signing for," but Officer Williams allegedly
replied, "[t]here is nothing to read. Sign or get the hell out of here." Pl.'s Resp. to Defs.' 56.1 ¶¶
28-29. Without raising his voice, Plaintiff told Officer Williams, "[d]on't get an attitude." Pl.'s
Aff. ¶ 9, ECF No. 158-4. Officer Williams then approached Plaintiff and yelled in a loud voice,
"I am going to punch you in the face" to which Plaintiff responded, "[t]ake your best shot." *See*
Pl.'s Resp. to Defs.' 56.1 ¶¶ 31-32; Pl.'s Dep. 77:13-18. At that point, Officer Cosentino — also
stationed at the lobby — intervened and said to Officer Williams, ". . . don't do it. Back off." *See*
Pl.'s Aff. ¶ 9; Pl.'s Dep. 85:14. Officer Williams ordered Plaintiff to "get the hell out," and

Plaintiff requested to speak with the "captain." Pl.'s Dep. 74:2-4. Officer Williams resumed assisting other members of the public. Pl.'s Resp. to Defs.' 56.1 at ¶ 35; Defs.' 56.1 ¶35.[4]

Subsequently, Defendant Officer Spinelli — who had not been present during the exchange between Plaintiff and Officer Williams — approached the desk and asked, "[w]hat is the problem?" Pl.'s Resp. to Defs.' 56.1 at ¶¶ 37-38; Pl.'s Dep. 81:13-17. When Officer Williams responded, "this guy [Plaintiff] doesn't want to sign for the recorder," Officer Spinelli grabbed Plaintiff by the arm, took him outside the Courthouse, and said "[g]et the hell out of here," striking Plaintiff's head with the tape recorder. *See* Pl.'s Resp. to Defs.' 56.1 ¶¶ 39; Pl.'s Dep. 90:18-19; 92:5-6; Pl.'s Aff. ¶ 5. Plaintiff again requested to speak with the "captain" whereupon Defendant Sergeant Alfieri came "running" outside the Courthouse. Pl.'s Aff. ¶ 11. Officer Spinelli reported that Plaintiff was "causing trouble," and Sergeant Alfieri directed Spinelli to take Plaintiff inside the Courthouse and issue a summons against him for disorderly conduct. *Id.* ¶ 12. Plaintiff expressed that he wanted to go home, but Sergeant Alfieri launched at Plaintiff, pinned him against the wall and threatened, "if you don't go inside, I am going to handcuff you and take you inside." *Id.* Plaintiff screamed out in pain. *Id.* Once inside, Officer Spinelli issued a summons, and Plaintiff was permitted to enter the Courthouse to use the library after filling out the voucher form. *Id*. ¶ 18. Plaintiff contends that he "obeyed everyone's commands." *Id*. ¶ 4.

<u>*Defendants' Version of the Facts*</u>

Defendants present a substantially different version of the facts. Officer Williams recalls that Plaintiff was taking a "few minutes" to review the voucher form at the security desk. *See*

---

[4]    I note, there seems to be an inconsistency here: Plaintiff initially testified that there were no other members of the public at the lobby; yet he concedes that Officer Williams went back to assisting other visitors. *See* Pl.'s Dep. 62:25-63:10; 65:9-12; Pl.'s Aff. ¶ 19; Pl.'s Resp. to Defs.' 56.1 ¶ 35.

Affidavit of Shawn Williams ("Williams Aff.") ¶ 17, ECF No. 170. While assisting other members of the public through the security, Officer Williams explained to Plaintiff that if he does not sign the voucher form, he would not be able to enter the Courthouse. *Id*. ¶ 19. Plaintiff then became irate, began to speak loudly, and refused to cooperate in vouchering the tape recorder, while standing in a place that hindered others from passing through the security. *Id*. ¶ 20. Officer Williams called for a supervisor per Plaintiff's request, and continued to assist other visitors at the security checkpoint. *Id*. ¶¶ 20, 23.

Officer Spinelli witnessed part of the confrontation while walking through the lobby. *See* Affidavit of Louis Spinelli ("Spinelli Aff.") ¶ 11, ECF No. 169. Despite Spinelli's efforts to intervene and calm him, Plaintiff continued to speak loudly and refused to cooperate, creating a disturbance in the Courthouse lobby. Defs.' 56.1 ¶ 41; *See* Declaration of Plaintiff ("Pl. Decl.") Ex. 10 ("Spinelli Dep.") 107:9-18, ECF No. 181. Officer Spinelli eventually returned the tape recorder to Plaintiff and bode him off. *See* Spinelli Dep. 121:2-8, 143:20-144:25. Officer Spinelli denies striking Plaintiff on the head with the recorder. Spinelli Dep. 143:20-144:25.[5] Per Plaintiff's demand to speak with a captain, Defendant Sergeant Alfieri was called to the lobby. Defs.' 56.1 ¶ 46; *See* Hanna Decl. Ex. I ("Daily Log"), ECF No. 171.

Sergeant Alfieri asked Plaintiff to step aside from the security checkpoint to allow other visitors to pass through. Defs.' 56.1 ¶ 49. Plaintiff responded, "[t]his is a public building. I can do what I want. I can say what I want." *Id*. ¶ 51. Both Sergeant Alfieri and Officer Spinelli warned Plaintiff that his conduct may result in the issuance of a summons for disorderly conduct.

---

[5]    I note that in an earlier part of his deposition Spinelli was asked, "Q. Did you hit me with the recorder?" to which he answered, "A. I believe so, yes. I handed you the tape recorder." (Spinelli Dep. 136:5-6). Later on in the deposition, Spinelli clarified that he had misheard the question to be asking, 'did you *hand* me the recorder,' which is why he responded in the affirmative. *See id*. at 143:20-144:25. He denies ever hitting Plaintiff. *Id*.

*Id*. ¶ 62-63. Yet, Plaintiff persistently acted in an irate, boisterous, and uncooperative manner, and Officer Spinelli issued Plaintiff a summons ("Summons") for disorderly conduct pursuant to N.Y. PENAL LAW § 240.20(2) ("[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e makes unreasonable noise." *See id*. ¶¶ 60, 67, 69; Hanna Decl. Ex. D (Summons), ECF No. 171. Defendants deny making any physical contact with Plaintiff, or taking him outside of the Courthouse. *See* Affidavit of James Alfieri ("Alfieri Aff.") ¶ 15, ECF No. 168; *see also* Williams Aff. ¶ 26; Spinelli Dep. 117:9-13.

Shortly thereafter, Officer Spinelli submitted an Unusual Occurrence Report memorializing the incident: "I observed Mr. Goonewardeh [Plaintiff] in the main lobby acting in an irrational manner yelling at Court Officer Shawn Williams . . . Mr. Goonewardeh refused to voucher his tape recorder and stated 'This is a public building, I can do whatever I want.'" Hanna Decl. Ex. E ("Unusual Occurrence Report"), at 2. At his deposition, Officer Spinelli noted that Plaintiff was "disrespectful" (Spinelli Dep. 271:11-16) and if he were in Plaintiff's shoes, Spinelli would have "apologized, and . . . the whole situation would have been diffused." *Id*. at 269:16-19.

The only non-party witness to the incident is Officer Joseph Cosentino, who was assigned to a post in the lobby of the Courthouse on September 11, 2014. Defs. 56.1 ¶ 14; Pl.'s Resp. to Defs. 56.1 ¶ 14.  From his post, Officer Cosentino observed Plaintiff being "[u]pset…very loud, uncontrollable[,]" and generally causing a disruption in the Courthouse lobby. *See* Deposition of Joseph Cosentino ("Cosentino Dep.") 22:25-23:5, 25:25-26:11, 27:10-21, 28:5-13, 31:19-22,

ECF No. 171-2. Officer Cosentino recalls there being other members of the public in the lobby at the time of the incident. *Id*. at 7:19-8:3.[6]

### 2.  Criminal Hearing Regarding the Summons

On November 6, 2014, it is undisputed that Plaintiff — represented by his attorney "Daria Aumand" — appeared before Judge Donna Golia at the Queens Criminal Court for a hearing regarding the Summons issued in connection with the September 11, 2014 incident ("Criminal Hearing"). *See* Defs.' 56.1 ¶ 96; Pl.'s Resp. to Defs.' 56.1 ¶ 96. Defendants submitted the following evidence reflecting that Plaintiff accepted an Adjournment in Contemplation of Dismissal ("ACD") at the Criminal Hearing: (1) a certified transcript of the Criminal Hearing transcribed by Official Court Reporter Angela Moody; (2) the Certificate of Disposition; and (3) the Record of Court Action, certified by the Court Clerk. Defs.' 56.1 ¶¶ 97-103; *See* Hanna Decl. Exs. L, K.

In contrast, Plaintiff claims that he had represented himself at the Criminal Hearing, he "never accepted an ACD" and that "[t]he case was dismissed." Pl.'s Resp. to Defs.' 56.1 ¶ 95, 99, 102. Plaintiff surmises that the court records and the hearing transcript submitted by Defendants were "created by the defense team." *See id.* at 100-04.

### 3.  July 16, 2015 Incident

On July 16, 2015, Plaintiff claims that he was leaving the Courthouse when he encountered Officer Spinelli, who was allegedly waiting for him outside the Courthouse. Pl.'s 56.1 ¶ 27. Plaintiff approached Officer Spinelli to accuse him of assaulting Plaintiff during the

---

[6]     Plaintiff submits an audio recording of what he declares to be his conversation with Officer Cosentino on December 14, 2015. Pl.'s Decl. Ex. 11 ("Audio Recording"). According to Plaintiff, Cosentino states in the recording that Plaintiff's interactions with Spinelli and Alfieri happened outside the Courthouse. Pl.'s Mem. of L. in Supp. Of Mot. for Summ. J. ("Pl.'s Br.") at 30, ECF No. 158-1. Insofar as the audio recording is offered to prove that Plaintiff's interactions with Alfieri and Spinelli occurred outside the Courthouse, it would constitute inadmissible hearsay.

previous incident on September 11, 2014. *See* Pl.'s Resp. to Defs.' 56.1 ¶ 81-84. According to

Plaintiff, Officer Spinelli told him, "I am done with you" and then "took his gun out of his

holster and held it against his stomach." Pl.'s Br. at 8, ECF No. 158-1; Pl.'s Dep. 176:20-22.

Officer Spinelli denies ever removing his firearm from its holster or otherwise making

any threatening gesture during his interaction with Plaintiff, and claims that he "walked away

from Plaintiff because [he] did not want to engage with him." Spinelli Aff. ¶ 35.

Plaintiff admits that during this encounter, Officer Spinelli avoided making eye contact,

seemed minimally engaged, and "moved back" and walked away from him to help another

member of the public. Pl.'s Dep. 176:3-19. Plaintiff also admitted that Officer Spinelli did not

point the gun toward Plaintiff at any time nor pursue Plaintiff. Pl.'s Dep. 178:4-6, 178:23-35.

## LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine

dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought."

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation

omitted). "[I]f there is evidence in the record as to any material fact from which an inference

could be drawn in favor of the non-movant, summary judgment is unavailable." *Holt v. KMI-*

*Continental*, 95 F.3d 123, 129 (2d Cir. 1996). "The moving party bears the initial burden of

establishing that there are no genuine issues of material fact[;] once such a showing is made, the

non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

At the summary judgment stage, the Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *See Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citations and internal quotation marks omitted). Nonetheless, even a *pro se* plaintiff is required to demonstrate the absence of a genuine issue of material fact. *See McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986) ("pro se litigants enjoy special latitude on summary judgment motions"); *see also Estes-El v. Dumoulin*, 2011 U.S. Dist. LEXIS 154788, *7 (E.D.N.Y. Feb. 9, 2011) (internal citations omitted) ("proceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment"). Moreover, a *pro se* litigant cannot rely upon "conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion. *Feuer v. Cornerstone Hotels Corp.*, 2017 U.S. Dist. LEXIS 124433, *23 (E.D.N.Y. Aug. 4, 2017) (*quoting Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

## DISCUSSION

This Court will address the following claims: (a) false arrest claims under 42 U.S.C. § 1983 and state law against all Defendants, (b) First Amendment retaliation claims under 42 U.S.C. § 1983 against all Defendants, (c) federal excessive force claim under 42 U.S.C. § 1983 against Sergeant Alfieri, (d) state malicious prosecution claim against Defendants, and (e) state assault and battery claims.

Defendants assert that each of Plaintiff's claims fail as a matter of law because "(1) Defendants acted with probable cause, (2) Plaintiff cannot satisfy the required elements of any claim, and (3) Defendants are entitled to qualified immunity." Defendants' Mem. of L. in Supp.

Of Mot. for Summ. J ("Defs.' Br.") at 8, ECF No. 167. Keeping in mind the leniency afforded to *pro se* plaintiffs, I will construe the best arguments that can be made by Plaintiff and analyze whether the undisputed facts would warrant a summary judgment in his favor, or in the alternative, whether a genuine dispute of material facts exists to defeat Defendants' motion. *See Bertin v. United States*, 478 F.3d at 491.

## A.    Federal and State False Arrest Claim

The false arrest claims are based on the September 11, 2014 incident where Plaintiff was issued a summons for disorderly conduct in violation of N.Y. PENAL LAW § 240.20(2). Under that provision, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e makes unreasonable noise." N.Y. PENAL LAW § 240.20(2). Plaintiff alleges that prior to issuing the summons, Sergeant Alfieri "grabbed-and-pinned" him and threatened, "if you don't go inside, I am going to handcuff you and take you inside." TAC ¶ 29. Plaintiff denies that he "behaved in any disorderly manner" or conduct at the time. TAC ¶ 79.

Under Federal and New York law, a plaintiff alleging false arrest must demonstrate that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer*, 63 F.3d at 118 (internal quotation marks and citation omitted); *accord Leibovitz v. Barry*, 2016 WL 5107064, at *8 (E.D.N.Y. Sept. 20, 2016); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted) ("A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law.")); *see also Amore v. Novarro*, 624 F.3d 522, 532 n.13 (2d Cir. 2010) ("A person is sufficiently seized to make a § 1983 claim for false arrest when he or she is detained by a police officer and told to remain in

10

place so that the police officer can write a summons.) (citations omitted); *accord Vasquez v. Pampena*, No. 08-cv-4184 (JG), 2009 U.S. Dist. LEXIS 42378, 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009)).

Courts in this Circuit have held that the existence of probable cause allows law enforcement officers an affirmative defense. *See, e.g.*, *Weyant*, 101 F.3d at 852 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.") (internal quotation marks and citations omitted). Probable cause exists when "officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). Courts evaluate the existence of probable cause based on the "totality of the circumstances" and the "facts available to the officer at the time of arrest." *Leibovitz*, 2016 WL 5107064, at *9 (internal quotation marks and citations omitted).

Defendants argue that the Officers had probable cause to arrest Plaintiff, because they had "ample grounds to reasonably believe Plaintiff had violated N.Y. Pen. L. §240.20(2)" based on Plaintiff's conduct at the Courthouse. Def.'s Br. at 12-15. However, the record in this case leaves open factual questions regarding the September 11, 2014 incident. Plaintiff denies that he was "speaking in a loud voice," and claims that it was Officer Williams who was yelling.[7] *See* Pl.'s Dep. 75:22-25; Pl.'s Aff. ¶ 4. In contrast, Defendants and Officer Cosentino unequivocally

---

[7]    I reject Plaintiff's argument that undisputed record shows his obedient manners. Pl.'s Aff. ¶4. In making this argument, Plaintiff points to select portions of Officer Williams' deposition testimony where he agrees Plaintiff was obedient at certain moments of the incident. *See* Williams Dep. 65:13-15. However, Plaintiff conveniently ignores the continued testimony where Officer Williams described Plaintiff's conduct as "irate" and "belligerent." *Id.* at 66:8-20. It would be up to the jury to draw inferences from Officer Williams' testimony regarding Plaintiff's conduct.

state that Plaintiff was using a loud voice, acting in a boisterous manner, and causing a disturbance. *See* Defs.' 56.1 ¶¶ 60, 67, 69. Documentary evidence, including the Summons and the Unusual Occurrence Report, supports Defendants' version of facts. *See* Hanna Decl. Ex. D (Summons dated Sept. 11, 2014); Hanna Decl. Ex. E, at 2 (Unusual Occurrence Report) (noting that Plaintiff was "acting in an irrational manner yelling"). In light of the dueling versions of the facts, it would be inappropriate for this Court to resolve this issue at the summary judgment stage. *See Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal citations omitted).

Defendants additionally argue that, even if the Defendants lacked probable cause to arrest Plaintiff, they should still prevail on summary judgment based on qualified immunity. *See* Defs.' Br. at 23-24. Qualified immunity may shield a public official from liability for civil damages if it was "objectively reasonable for him [or her] to believe that his [or her] actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotations omitted). However, where facts material to the determination of "reasonableness" are disputed, "summary judgment is not appropriate." *See Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007); *see also Jenkins v. City of New York*, 478 F.3d 76, 86-87 (2d Cir. 2007) ("Because the right to be free from false arrest is clearly established, the issue of qualified immunity turns on whether it was objectively reasonable for defendants to believe that probable cause existed."). As mentioned in the preceding paragraphs, facts regarding Plaintiff's conduct and the parties' interactions which transpired on September 11, 2014 are clearly disputed. Therefore, this Court cannot determine — based on the cold record — whether it would have been objectively reasonable for Defendants to believe that probable cause existed. *See id.*  Therefore, I

recommend that both Plaintiff and Defendants' motions for summary judgment on the federal and state false arrest claims be DENIED.

**B.      First Amendment Retaliation Claim**

Plaintiff's First Amendment retaliation claim comprises of the following factual allegations: (1) that Plaintiff's words "don't get an attitude" prompted Officer Williams to retaliate with a threat to "punch" him; (2) that the Summons was based on his "telling Officer Williams not to 'get an attitude,'" and (3) Sergeant Alfieri used excessive force in retaliation for Plaintiff stating that he wanted to go home. TAC ¶¶ 99-100.

As to the first allegation, Defendants deny that Officer Williams ever threatened Plaintiff. Defs.' Resp. to Pl.'s 56.1 ¶ 3. Second, Defendants argue that Plaintiff's statement to Officer Williams – "[do] not get an attitude" – was uttered outside the presence of Officers Spinelli and Alfieri, and therefore, they could not have retaliated against speech that they were not even aware of. *See* Defs.' Br. at 18-20. Third, Defendants assert that Plaintiff's alleged statement "I want to go home" would not constitute protected speech. *Id.* at 19. Therefore, Defendants seek summary judgment in their favor on the First Amendment retaliation claim.

To prevail on a First Amendment retaliation claim, "a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Having reviewed the "content, form, and context of a given statement, as revealed by the whole record" this Court finds that triable issues exist as to Plaintiff's retaliation claims. *See Russo v. City of Hartford*, 341 F. Supp. 2d 85, 96, 2004 U.S. Dist. LEXIS 21093, *16 (D. Conn. 2004) (quoting *Pappas v.*

*Giuliani*, 290 F.3d 143, 153 (2d Cir. 2002)) (denying certain defendants' motions for summary judgment on plaintiff's First Amendment retaliation claim).

In *Smith v. Campbell*, the Second Circuit opined that a plaintiff had satisfied the elements for her First Amendment retaliation claims by showing that she had complained to the State Police about a state trooper's conduct at a traffic stop, and hours later, the state trooper issued three traffic tickets against her. *See* 782 F.3d 93, 96-100 (2d. Cir. 2015) (dismissing the First Amendment retaliation claim on other procedural grounds).

Similarly, here, the strongest argument available to Plaintiff is that he complained about Officer Williams' and Spinelli's treatment to Sergeant Alfieri, and in return, he was punished by the Defendants who issued a summons against him. *See id.* at 100. The record suggests that Officers Williams and Spinelli were aware that Plaintiff had "demanded to speak to [their] superior" to complain. Spinelli Aff. ¶¶ 11, 16. Defendants made allegedly false representations in reporting that Plaintiff was acting in a disorderly manner, and consequently issuing the Summons. *See* Pl.'s Aff. ¶¶ 11-12; Alfieri Aff. ¶¶ 13, 16. Given the temporal proximity between Plaintiff's protected speech (i.e., complaining) and Defendants' adverse action (i.e., issuance of a summons), Plaintiff may be able to establish a retaliation claim. *See Wahl v. Cty. of Suffolk*, 466 F. App'x 17, 19 (2d Cir. 2012) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."). Furthermore, Officer Spinelli testified that Plaintiff was issued a summons because he was "disrespectful." *See* Spinelli Dep. 271:11-16, 269:16-19. Because this Court cannot ignore the possibility that a jury may find that the issuance of the summons may have been, at least in part, driven by a retaliatory motive, summary judgment would be inappropriate. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)

(holding that if State action is based upon both proper motives and an improper motive to retaliate, the action may be sustained if it would have been taken even in the absence of the protected conduct). Therefore, this Court recommends that Defendants' motion for summary judgment on the First Amendment retaliation claim be DENIED.[8]

Likewise, in light of the competing evidence presented by Defendants in this case, summary judgment is unavailable for Plaintiff. *See Holt*, 95 F.3d at 129. The record evidence, particularly the testimony of the officers, if believed by the jury, court establish the existence of probable cause justifying the issuance of the Summons at trial. Therefore, Plaintiff's motion for summary judgment on the First Amendment retaliation claim is DENIED.

## C.    Federal Excessive Force Claim Against Sergeant Alfieri

Plaintiff claims that Sergeant Alfieri used excessive force against him outside the Courthouse on September 11, 2014. TAC ¶¶ 119-23. In particular, Plaintiff alleges that Officer Alfieri injured Plaintiff's left shoulder and elbow by grabbing and pinning Plaintiff's left arm, and then pinning Plaintiff against the wall outside the Courthouse. TAC ¶¶ 29, 30.

The Fourth Amendment prohibits the use of unreasonable or excessive force by a police officer in the course of effecting an arrest. *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The objective reasonableness of force requires a "fact specific inquiry" as to the nature and quality of the intrusion on the plaintiff's rights balanced against the governmental interests. *Id.* (citation omitted). Thus, that balance requires consideration of several factors, "including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting

---

[8]    Insofar as Plaintiff's First Amendment retaliation claim is based on his statement "I want to go home," I agree with the Defendants that the statement would not constitute protected speech. However, I note that this statement may be relevant to Plaintiff's Fourth Amendment claim, as it may demonstrate the lack of Plaintiff's consent to the alleged confinement.

to evade arrest." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (internal quotation marks and citation omitted).

Defendants argue that this claim should be dismissed because (1) the injury suffered by Plaintiff is *de minimis* and (2) the allegations are uncorroborated. *See* Defs.' Br. 20. In this Circuit, courts have deemed claims of excessive force unactionable where the allegations consisted of "*de minimis* injury" such as bruising and scratches. *See Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) ("[S]hort-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth" have been held to be *de minimis* and, thus, unactionable."). On the other hand, courts have "permitted claims to survive summary judgement where the only injury alleged is bruising." *Hayes v. N.Y.C. Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) (summary order); *Graham v. City of New York*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013) (denying the defendants' summary judgment motion for excessive force, opining that "the fact that [the p]laintiff may not have sustained serious long lasting harm is not dispositive"); *Jennings v. Decker*, 359 F. Supp. 3d 196, 207 (N.D.N.Y. 2019) (noting that "multiple courts in this Circuit  have held at the summary judgment stage that even minor injuries, including scrapes and bruises, can support an excessive-force claim") (internal citations and quotations omitted).

In *Robison v. Via*, the Second Circuit denied a summary judgment motion by one of the police officer defendants who allegedly "pushed [the plaintiff] against the door of her car . . . and twisted her arm behind her back," while it granted summary judgment in favor of a second police officer defendant who only "pushed" or "pried" at the plaintiff's fingers.' 821 F.2d 913, 924-25 (2d Cir. 1987). Here, viewed from the prism of Plaintiff's version of the facts, the alleged

'grabbing-and-twisting' by Officer Alfieri more closely resembles the force used by the first police officer in *Robison* whose motion for summary judgment was denied. *See id*.

Moreover, Defendants argue that the excessive force claim fails because Plaintiff's alleged injury is uncorroborated by evidence, but the cases they cite to are distinguishable from the case at hand. *See* Defs.' Br. 20. For example, Defendants cite to *Henry v. Brown*, a case in which excessive force claims were dismissed on summary judgment. No. 14-CV-2828 LDH, 2016 U.S. Dist. LEXIS 69930 (E.D.N.Y. May 27, 2016). There, the plaintiff alleged to have suffered a permanent injury "so severe that his leg was nearly lost," but his medical records from the date of the injury revealed only minor bleeding on his leg, "directly and irrefutably contradict[ing]" his allegation. *Id.* at *5. Here, Plaintiff's allegations regarding his injury are not so clearly contradicted by evidence in the record. Unlike the cases cited by Defendants, Plaintiff was able to testify in detail regarding the alleged use of force by Defendants and the consequent injury, including intermittent pains in his elbow for which he took "Advil" for "about a year." Pl.'s Dep. 107:6-21. 203:11-18. *Contra Allah v. Wilson*, No. 13 Civ. 4269, 2017 WL 4350611, at *3 (S.D.N.Y. July 31, 2017) (granting summary judgment for defendant where plaintiff's contemporaneous medical records lacked any mention of pain, and plaintiff could not recall any details about the alleged injuries at his deposition); *Tota v. Bentley*, 379 Fed. Appx. 31, 34 (2d Cir. 2010) (granting summary judgment to defendants where the plaintiff failed to corroborate his allegations with independent evidence, did not mention the purported brutality in a previous criminal proceeding, and could not recollect any events leading up to his arrest).

Although the fact that Plaintiff "did not seek medical treatment . . . may ultimately weigh against [him] in the minds of the jury in assessing whether the force used was excessive," if the jury finds that the force used was unreasonable, Plaintiff may recover "even if the injuries

inflicted were not permanent or severe." *See Jennings*, 359 F. Supp. 3d at 207; *see also Ferguson v. City of New York*, No. 17-CV-4090 BMC, 2018 U.S. Dist. LEXIS 127049, *6 (E.D.N.Y. July 30, 2018) ("Even if plaintiff's version prevails, this is not to say that plaintiff is entitled to anything more than nominal damages for this very brief encounter. But the presence or absence of damage does not defeat the potential liability for these claims if plaintiff prevails on the facts that he has introduced on this motion."). Therefore, I recommend that Defendant's motion for summary judgment on Plaintiff's excessive force claim be DENIED.

In like regard, summary judgment is not available to Plaintiff on his excessive force claim against Sergeant Alfieri. Alfieri denies having used any physical force against Plaintiff at any time. Alfieri Aff. ¶ 15. The testimony of officers Spinelli and Williams support Alfieri's position. *See* Spinelli Aff. ¶ 18-19 ("I did not see Sergeant Alfieri put his hands on Plaintiff in any way."); *see also* Williams Aff. ¶ 26 (same). Since the parties dispute the facts pertinent to this claim, I recommend that Plaintiff's motion be DENIED.

## D.    State Assault and Battery Claims

Plaintiff brings claims of (1) assault against Officer Williams for allegedly threatening him with the words, "I will punch you" (TAC ¶¶ 19, 20); (2) assault and battery against Officer Alfieri for allegedly grabbing-and-pinning him on September 11, 2014 (TAC ¶¶ 29-33, 157, 158); (3) assault and battery against Officer Spinelli for striking his head with a tape recorder outside the Courthouse on September 11, 2014 (TAC ¶¶ 25, 26); and (4) assault against Officer Spinelli arising from an incident in July 16, 2015 ("July 16, 2015 Assault Claim") in which Officer Spinelli allegedly stated, "I am done with you" and then "took his gun out and held it against his stomach." TAC ¶¶ 46-47.

Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact; a battery is "intentional wrongful physical contact with another person without consent." *Sulkowska v. City of N.Y.*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001). Further, it is decided that "any use of force" by a police officer outside the context of a lawful arrest — regardless of the amount of force — is a technical assault or battery. *Sulkowska v. City of N.Y.*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001); *Johnson v. Suffolk Cty. Police Dep't*, 245 A.D.2d 340, 665 N.Y.S.2d 440, 440 (2d Dep't 1997). Put differently, if the arrest or issuance of summons is deemed to have been unlawful, any physical contact during the course of the arrest may be deemed at least a technical assault or battery. *See Ferguson v. City of New York*, 2018 U.S. Dist. LEXIS 127049, *5, 2018 WL 3626427 (E.D.N.Y. July 30, 2018) ("Any intentional physical contact by Officer Sanchez without plaintiff's consent was at least a technical assault or battery under New York law because it occurred outside a lawful seizure."); *Pawloski v. State*, 45 Misc. 2d 933, 258 N.Y.S.2d 258, 265 (Ct. Claims 1965) (finding assault and battery arising out of false arrest where plaintiff "was touched by the State Police"). Hence, the assault and battery claims arising out of the September 11, 2014 incident hinge on facts germane to his false arrest claim, which remain unresolved at this stage. The existence of disputed facts thus precludes summary judgment on the assault and battery claims related to the September 11, 2014 incident.

On the other hand, I recommend dismissal of Plaintiff's July 16, 2015 Assault Claim against Officer Spinelli. In his Complaint, Plaintiff alleged that Officer Spinelli waited for him outside the Courthouse, engaged in a hostile conversation in which he stated "I am done with you," and then "took his gun out and held it against his stomach." TAC ¶ 47.[9] Officer Spinelli

---

[9]    Plaintiff claimed that he had recorded the entire interaction with a video camera. Later, Plaintiff stated that the recording "was deleted by accident." Pl.'s 56.1 ¶ 82.

denies ever removing his firearm from its holster or otherwise making any threatening gesture during his interaction with Plaintiff, and claims that he "walked away from Plaintiff because [he] did not want to engage with him." Spinelli Aff. ¶ 35.

Plaintiff testified in his deposition that Officer Spinelli happened to be "just standing there [outside the courthouse]." Pl.'s Dep. 174:15-18. Plaintiff concedes that it was he who proactively approached Officer Spinelli and accused him of unlawful conduct. *See* Pl.'s Dep. 176:2-21. Plaintiff admits that during the encounter, Officer Spinelli avoided making eye contact, seemed minimally engaged, and "moved back" to help another member of the public who approached. Pl.'s Dep. 176:3-19. The record makes clear that during the interaction, Plaintiff was completely free to approach or leave the scene. Pl.'s Dep. 184:10-16. *Contra Leahy*, 609 F. Supp. at 672-73 (declining to grant directed verdict for defendant on an assault claim where the defendant-investigator prevented plaintiff from leaving the room and "placed him in apprehension of immediate harm by pulling back his jacket to reveal a firearm he was carrying").[10] Plaintiff also admitted that Officer Spinelli did not point the gun toward Plaintiff at any time, nor did he pursue Plaintiff. Pl.'s Dep. 178:4-6, 178:23-35. Other than his own testimony — which fails to align with his allegations — Plaintiff has not presented any other evidence to substantiate his claim. *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir.

---

[10] I note that Plaintiff has submitted DVD footage which allegedly shows Officer Spinelli stepping out of the Courthouse moments before Plaintiff left the Courthouse. Pl.'s 56.1 ¶ 27 (". . . DVD footage shows that Defendant Spinelli went outside at 15:06:01 then at 15:06:58, Plaintiff went outside"); *See* Pl.'s Decl. Ex. 12, ECF No. 181. In this Court's view, the DVD footage does not show any officers leaving the Courthouse at 15:06:01 p.m. Even assuming that the DVD footage depicted Officer Spinelli leaving the building at that time, it still would not support Plaintiff's allegation that Officer Spinelli was waiting for Plaintiff outside the Courthouse to assault him. Such conjecture is insufficient to defeat a motion for summary judgment. *See Major League Baseball Props., Inc. v. Salvino, Inc*., 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, or based on speculation.").

2005) (holding that a district court may properly disregard self-serving testimony at the summary judgment stage which is "replete with inconsistencies and improbabilities."). Despite viewing the facts in the most favorable light toward Plaintiff, I am not convinced that any rational trier of fact could find in Plaintiff's favor regarding his July 16, 2015 Assault Claim against Officer Spinelli. Therefore, I recommend that Defendants' motion for summary judgment on this claim be GRANTED.

## E.    State Malicious Prosecution Claim

I now turn to Plaintiff's malicious prosecution claim under New York law, alleging that Defendants fabricated evidence and gave false information to the Queens County District Attorney's Office forcing Plaintiff to defend himself in court. TAC ¶¶ 91, 92, 94. Plaintiff further claims that he "never accepted an ACD" and surmises that the court records submitted by Defendants are forged. *See* Pl.'s Resp. to Defs.' 56.1 ¶ 95, 99, 100-04.

Under New York law, a claim for malicious prosecution requires a showing that: (i) the defendant initiated or continued a criminal proceeding against him; (ii) the proceeding was terminated in the plaintiff's favor; (iii) there was no probable cause to initiate the proceeding; and (iv) the proceeding was instituted with malice. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *accord Weiner v. McKeefery*, 90 F. Supp. 3d 17, 33 (E.D.N.Y. 2015).

It is well settled that a plaintiff's "acceptance of an ACD [adjournment in contemplation of dismissal] precludes a claim for malicious prosecution." *Eke v. The City of New York*, 116 A.D.3d 403 (1st Dep't 2014). This is because the acceptance of an ACD does not constitute a favorable termination, which is a prima facie element of a malicious prosecution claim. *See Hollender v. Trump Vil. Coop.*, 58 N.Y.2d 420, 426 (1983) ("For the adjournment in

contemplation of dismissal, being as unadjudicative of innocence as it was of guilt, by its very nature operated to bar recovery.").

Defendants have submitted the following evidence to prove Plaintiff's acceptance of an ACD in resolution of the Summons: (1) the Certificate of Disposition reflecting that an ACD was entered on November 6, 2014 and the matter was dismissed the following day; (2) the Record of Court Action reflecting that Plaintiff appeared before Justice Golia at the Queens County Criminal Court on November 6, 2014, and a handwritten notation memorialized an "ACD" with "1 day sealing," pursuant to "170.55," "w/ consent." (3) the certified transcript of the Criminal Hearing before Justice Golia. *See* Hanna Decl. Ex. L at 1, 4, Ex. K, 2:8-5:10.

Throughout the period of discovery, Plaintiff has not adduced any evidence that the certified court documents and transcripts may have been fabricated, nor has he uncovered any reason to believe that the documents are inaccurate.[11] Plaintiff's conclusory statements denying his acceptance of an ACD is blatantly contradicted by the court's record. Taking into account all of the record evidence, I find that no reasonable juror could render a verdict in favor of Plaintiff regarding his malicious prosecution claim. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Addona v. D'Andrea*, 692 F. App'x 76, 77 (2d Cir. 2017) (holding that the District Court was correct in granting summary judgment for the officers on plaintiff's excessive force claim on the basis of the body camera

---

[11]   I note that Plaintiff has deposed the Official Court Reporter Angela Moody to examine the procedures of the transcription and to ask questions regarding its accuracy. Moody testified that she went through the appropriate channels to locate Plaintiff's folder from his Criminal Hearing, and that she was able to find the entire transcript of the Hearing before Judge Golia. See Moody Dep. 49:12-23, Hanna Decl. Ex. C.

footage, where it blatantly contradicted the plaintiff's version of the facts); *Vega v. Rell*, 611 Fed. Appx. 22, 25-26 (2d Cir. 2015) (affirming a grant of summary judgment dismissing a prisoner's deliberate-indifference-to-medical-needs claim where the prisoner's account was "undercut" by "uncontroverted medical records."). Therefore, Plaintiff's malicious prosecution claim against all Defendants should be DISMISSED.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion for summary judgment be GRANTED with respect to the following claims: (a) state assault against Officer Spinelli arising from the July 16, 2015 incident, and (b) state malicious prosecution against all Defendants. I recommend that Defendants' motion be DENIED as to the following claims: (a) state and federal false arrest against all Defendants, (b) First Amendment retaliation against all Defendants, (c) federal excessive force against Defendant Alfieri, and (d) state assault and battery claims against Defendants arising from the September 11, 2014 incident. Further, I recommend that Plaintiff's Motion for Summary Judgment be DENIED in its entirety. Defendants' counsel is directed to serve a copy of this Report and Recommendation upon Plaintiff at his last known address via return receipt delivery and to file proof of service with the Court within five (5) days of the filing of this Report and Recommendation.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
        March 5, 2020