Clerk's Office
Filed Date:

1/7/2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW
YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

PRASANNA GOONEWARDENA,

Plaintiff,

v.

LOUIS SPINELLI, JAMES ALFIERI, and SHAWN
WILLIAMS,

Defendants.

-----------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
15-CV-5239 (MKB) (ST)

MARGO K. BRODIE, United States District Judge:

Plaintiff Prasanna Goonewardena, proceeding *pro se*, commenced the above-captioned

action on September 10, 2015 against Defendants Louis Spinelli, Officer Badge Number 480.

(Compl., Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on November 6, 2015,

adding Angela Moody as Defendant, (Am. Compl., Docket Entry No. 8), a Second Amended

Complaint on March 23, 2016, adding Sergeant Alfieri as a Defendant, (Second Am. Compl.,

Docket Entry No. 26), and a Third Amended Complaint ("TAC") on May 19, 2016, adding

Officer Williams as a Defendant, (TAC, Docket Entry No. 35).  Plaintiff asserts First

Amendment retaliation and false arrest claims against all Defendants, an excessive force claim

against Sergeant Alfieri, an assault claim against Officer Williams, (TAC ¶¶ 19–20), assault and

battery claims against Sergeant Alfieri (*id.* ¶¶ 29–33, 157–158), and two assault claims and a

battery claim against Officer Spinelli.[1]  The parties cross-moved for summary judgment pursuant

---

[1]  By Memorandum and Order dated September 26, 2017, the Court adopted a report and
recommendation by Judge Tiscione and denied Plaintiff's motion to file a fourth amended
complaint (the "September 2017 Decision").  (Sept. 2017 Decision, Docket Entry No. 64.)  The
Court also (1) granted Defendants' motion to dismiss the federal excessive force claims against

to Rule 56 of the Federal Rules of Civil Procedure,[2] and on September 3, 2019, the Court referred the motions to Magistrate Judge Steven L. Tiscione for a report and recommendation, (Order dated Sept. 3, 2019).

By report and recommendation dated March 5, 2020, Judge Tiscione recommended that the Court deny Plaintiff's motion for summary judgment and also deny Defendants' motion for summary judgment as to Plaintiff's (1) federal and state false arrest claims against all Defendants, (2) First Amendment retaliation claim against all Defendants, (3) federal excessive force claim against Sergeant Alfieri, and assault and battery claims against Sergeant Alfieri and Officer Spinelli, (5) and assault claim against Officer Williams arising from the September 11, 2014 incident (the "R&R").  (R&R, Docket Entry No. 191.)  For the reasons set forth below, the Court adopts the R&R in part.  The Court grants in part and denies in part Defendants' motion for summary judgment.

## I.   Background

The following facts are undisputed unless otherwise noted.  This case arises out of two incidents at the New York Supreme Court, Queens County (the "Courthouse"), one with Plaintiff

---

Officers Spinelli and Williams and the federal malicious prosecution, malicious abuse of the criminal process, fabrication of evidence, selective enforcement, failure to intervene, "unconstitutional defamation," and federal and state conspiracy claims against Sergeant Alfieri, Officer Spinelli, and Officer Williams (the "Court Officers"), and (2) denied Defendants' motion to dismiss the action against Officers Spinelli and Williams for lack of personal jurisdiction, Plaintiff's state and federal false arrest claims against the Court Officers, federal excessive force claim against Sergeant Alfieri, state assault and battery claims against the Court Officers, state malicious prosecution claims against the Court Officers, and First Amendment retaliation claims against the Court Officers.  (*Id.*)  The Court also granted Defendants' motion to dismiss all claims against Moody and dismissed her from the action.  (*Id.*)

[2]  (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 165; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 167; Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), Docket Entry No. 158-1; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Opp'n."), Docket Entry No. 158-1.)

and New York state court Officers Spinelli and Williams, and Sergeant Alfieri on September 11, 2014 (the "September 2014 Incident") and the other with Plaintiff and Officer Spinelli on July 16, 2015 (the "July 2015 Incident").  (*See generally* TAC.)

### a.   The September 2014 Incident

On September 11, 2014, Plaintiff entered the Courthouse between 10:00 and 10:30 AM to visit the law library.  (Dep. of Pl. ("Pl.'s Dep.") 52:17, 52:22–53:10, annexed to the Decl. of Monica Hanna ("Hanna Decl.") as Ex. A; Docket Entry No. 171-1.)  Plaintiff proceeded to the Courthouse security station in the lobby of the building and placed his bag, which contained a tape recorder, into the X-ray machine where Officer Williams was assigned.  (*Id.* at 64:13–21; Pl.'s Stmt of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶ 2, Docket Entry No. 158-5; Defs.' Resp. to Pl.'s 56.1 ¶ 2, Docket Entry No. 176.)  Officer Williams asked Plaintiff whether there was a tape recorder in his bag, (Pl.'s Dep. 64:18–21), and informed him that he could not "take [the tape recorder] inside" and would need to leave it at the front desk, (*id.* at 67:11–18).  Plaintiff removed the tape recorder from his backpack and gave it to Officer Williams, who then completed part of the voucher form and gave Plaintiff the form[3] to sign.  (*Id.* at 67:4–10, 70:9–21; Aff. of Officer Williams in Supp. of Defs.' Mot. ("Williams Aff.") ¶ 17, Docket Entry No. 170.)  Plaintiff then proceeded to read the form.  (Pl.'s Dep. 70:9–21.)

The parties dispute the subsequent interactions.  Plaintiff contends that he took "about a minute" to read the form, (*id.* at 71:2–), Officer Williams asked "[a]re you going to sign or what," and that Plaintiff responded that he "want[s] to read what [he is] signing," (*id.* at 73:7–9).  Officer Williams told Plaintiff that "[t]here's nothing to read" and to "[e]ither sign or get out."

---

[3]  The form consists of a single page.  (*See* Property Voucher, annexed to Hanna Decl. as Ex. F, Docket Entry No. 171-6; Pl.'s Dep. 68:7–10.)

(*Id.* at 73:12–15.)  Plaintiff responded, "Don't get an attitude," and Officer Williams stated, "Get an attitude?  I'm going to punch you in the face."  (*Id.*)  Plaintiff told Officer Williams to "take [his] best shot."  (*Id.* at 75:7.)  Plaintiff contends that he did not "speak[] in a loud voice."  (*Id.* at 75:22–25.)  Officer Williams moved towards Plaintiff and gestured as if he was going to punch Plaintiff with his right arm.  (*Id.* at 73:15–23.)  Officer Cosentino, who was also working in the lobby, said, "Shawn, don't do it."  (*Id.*)  Officer Williams then told Plaintiff to "get the hell out of here."  (*Id.* at 74:2–3.)  Plaintiff asked to speak with a captain.  (*Id.*)

Officer Spinelli "came running" about ten seconds later, (*id.* at 81:13–82:2–3), and asked Officer Williams "what's the matter," (*id.* at 89:25).  Officer Williams, who was holding the recorder in his hand, told Officer Spinelli that Plaintiff did "not want to sign for the recorder." (*Id.* at 90:5–6.)  Officer Spinelli asked for the recorder, and grabbed Plaintiff's left arm, and said "come over here."  (*Id.* at 90:8–15.)  Plaintiff did nothing.  (*Id.* at 90:20–21.)  Officer Spinelli took Plaintiff outside and hit him in the head with the tape recorder and told him to "[g]et the hell out."  (*Id.* at 91:21–92:3.)  Plaintiff again asked "to speak to the captain."  (*Id.* at 97:21.)

Approximately two minutes later, Sergeant Alfieri came running, (*id.* at 97:23–98:4), and asked, "[W]hat happened?" (*id.* at 102:12–16).  Officer Spinelli responded, "[T]his guy is causing trouble."  (*Id.* at 102:22–23.)  Sergeant Alfieri told Officer Spinelli to "take [Plaintiff] inside and give him a summons for disorderly conduct."  (*Id.* at 103:2–5.)  Plaintiff responded, "I don't want to go inside anymore; I'm going to go home," and Sergeant Alfieri "launched at" Plaintiff.  (*Id.* at 106:23–25.)  Sergeant Alfieri then grabbed Plaintiff's "left arm," "twisted [his] left hand," pushed and "pinned" Plaintiff against the wall, and said, "[i]f you don't go inside I am going to handcuff you and take you inside," and Plaintiff screamed.  (*Id.* at 107:6–21.)  Sergeant Alfieri escorted Plaintiff inside the Courthouse to the lobby, (*id.* at 115:17–18, 116:12–16), and

told Officer Spinelli to issue the summons, (*id.* at 119:24–120:11).  Plaintiff was never handcuffed.  (*Id.* at 115:8–10.)

Defendants contend that after Plaintiff took several minutes to read the form, Officer Williams asked Plaintiff "whether he was going to sign the form," that Plaintiff responded, "Don't rush me.  I am reviewing what I am signing," and that Officer Williams told Plaintiff "[t]here is not much to review.  If you do not sign the voucher, you cannot enter the Courthouse with the tape recorder."  (Williams Aff. ¶ 19.)  Officer Williams remained behind the security desk at all times and did not reach over the desk; Plaintiff does not dispute that Officer Williams remained behind the desk.  (*Id.*; Pl.'s Dep. 60:6–9.)  Plaintiff then became "irate, [began] to raise his voice and speak loudly, and refuse[d] to cooperate in vouchering his tape recorder while standing in a place that made it difficult for others entering the Courthouse to pass."  (Williams Aff. ¶ 20; Aff. of Louis Spinelli in Supp. of Defs.' Mot. ("Spinelli Aff.") ¶ 12, Docket Entry No. 169; Aff. of James Alfieri in Supp. of Defs.' Mot. ("Alfieri Aff.") ¶ 12, Docket Entry No. 168.)  Officer Williams contends that he did not touch Plaintiff or threaten Plaintiff.  (Williams Aff. ¶ 21.)  Plaintiff then requested to speak with Officer Williams' supervisor and Officer Williams resumed his duties assisting other members of the public.  (*Id.* ¶¶ 22–23.)  Officer Spinelli and Sergeant Alfieri, both of whom were already in the lobby, intervened to assist Officer Williams and "took Plaintiff aside, so that he was no longer in a place that made it difficult for others entering the Courthouse to pass."  (*Id.* ¶ 24; Spinelli Aff. ¶¶ 13–14; Alfieri Aff. ¶ 13.)  Officer Williams could not hear their conversation.  (Williams Aff. ¶ 26.)  While speaking with Sergeant Alfieri and Officer Spinelli, Plaintiff said in a loud voice: "[T]his is a public building.  I can do what I want.  I can say what I want."  (Alfieri Aff. ¶ 14; Spinelli Aff. ¶ 17.)

In his affidavit in support of Defendants' summary judgment motion, Officer Spinelli stated that he and Sergeant Alfieri warned Plaintiff that his "conduct could result in the issuance of a summons for being disorderly." (Spinelli Aff. ¶¶ 21–22; Defs.' Stmt of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶ 62, Docket Entry No. 66.) Plaintiff disputes that Sergeant Alfieri warned him and contends that they only asked for identification. (Pl.'s 56.1 ¶ 18.)

"After Plaintiff failed to calm down for several minutes, and instead continued to speak loudly, cause a disturbance, and refuse to cooperate with [Sergeant Alfieri] and [Officer] Spinelli," the officers agreed that Plaintiff's conduct "justified the use of [their] discretion to issue a summons for disorderly conduct." (Alfieri Aff. ¶ 16; Spinelli Aff. ¶ 23.) Plaintiff waited in the "Courthouse lobby for approximately [ten] minutes while [Officer Spinelli] issued Plaintiff a summons[4] for disorderly conduct." (Spinelli Aff. ¶ 24.) Sergeant Alfieri assisted Officer Spinelli in issuing the summons by requesting identification from Plaintiff and reciting the applicable section of the New York Penal Code. (*Id.*)

Sergeant Alfieri states in his affidavit in support of summary judgment that he "did not place [his] hands on Plaintiff at any time" "pin Plaintiff against a wall, punch, or kick Plaintiff." (Alfieri Aff. ¶ 15.) Officers Williams and Spinelli "did not see Sergeant Alfieri" become physical with Plaintiff at any time and did not hear Plaintiff yell that he was in pain. (Williams Aff. ¶ 26; Spinelli Aff. ¶ 19.)

Plaintiff contends that, as a result of the September 2014 Incident, he experienced pain in his shoulder and elbow "on and off for awhile [sic]," (Pl.'s Dep. 200:9–25), but he did not seek

---

[4] Officer Spinelli issued a summons to Plaintiff for disorderly conduct. (Criminal Summons, annexed to Hanna Decl. as Ex. D, Docket Entry No. 171-4.)

medical treatment, (*id.* at 201:5–7).  While the pain does not interfere with Plaintiff's ability to sleep, the pain may reoccur at nights or when he lifts his arms.  (*Id.*)  Plaintiff can sometimes lift things like groceries.  (*Id.*)  Plaintiff took "Advil" for "about a year."  (*Id.* at 203:11–18.)

**b.  The July 2015 Incident**

On July 16, 2015, Plaintiff retuned to the Courthouse, (Defs.' 56.1 ¶ 79; Pl.'s Resp. to Defs.' 56.1 ¶ 79, Docket Entry No. 175), and as he exited the Courthouse, Plaintiff encountered Officer Spinelli outside and approached Officer Spinelli, while attempting to record their interaction.  (Defs. 56.1 ¶¶ 80–82; Pl.'s Resp. to Defs.' 56.1 ¶¶ 80–82.)  Plaintiff asked Officer Spinelli "[r]emember me? . . . [y]ou assaulted me, remember?" and Officer Spinelli responded "I don't know what you're talking about, I didn't assault anybody."  (Pl.'s Dep. 176:2–10.)  Officer Spinelli then "moved back" and Plaintiff repeated himself.  (*Id.* at 176:13–25.)  Plaintiff contends that Officer Spinelli "took out his gun and he held it against his body" with his right hand.  (*Id.*)  Plaintiff then walked away into a crowd.  (*Id.* at 177:11–17.)  Defendants contend that Officer Spinelli "never pointed his firearm at Plaintiff" and "did not follow [him]."  (Defs.' 56. 1 ¶¶ 85–86.)

**II.  Report and Recommendation**

By report and recommendation dated March 5, 2020, Judge Tiscione recommended that the Court deny Plaintiff's motion for summary judgment and also deny Defendants' motion for summary judgment as to Plaintiff's (1) federal and state false arrest claims against all Defendants, (2) First Amendment retaliation claim against all Defendants, (3) federal excessive force claim against Alfieri, and (4) assault claim against Officer Williams, and (5) assault and battery claims against Sergeant Alfieri and Officer Spinelli, arising from the September 11, 2014 Incident.  (R&R 23.)  Judge Tiscione also recommended that the Court grant Defendants' motion

for summary judgment as to Plaintiff's (1) assault claim against Officer Spinelli arising from the July 16, 2015 Incident, and (2) state malicious prosecution claims against all Defendants.  (*Id.*)

On March 31, 2020, the Court adopted the unopposed portions of the R&R.  The Court denied Plaintiff's motion for summary judgment and granted Defendants' motion for summary judgment as to Plaintiff's state assault claim against Officer Spinelli arising from the July 2015 Incident, and state malicious prosecution claim against all Defendants.  (Order dated Mar. 31, 2020.)

### a.   Federal and state false arrest claims

Judge Tiscione recommended that the Court deny Defendants' motion for summary judgment as to Plaintiff's false arrest claim because of disputed issues of fact as to whether the officers had probable cause to arrest Plaintiff, making it unclear "whether it would have been objectively reasonable for Defendants to believe that probable cause existed."  (R&R 11–12.)

### b.   First Amendment retaliation claim

Judge Tiscione recommended that the Court deny Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim.  (*Id.* at 15.)  Judge Tiscione found that the record suggests that Officers Williams and Spinelli were aware that Plaintiff wanted to speak with their superiors to complain of their conduct, and if "Defendants made allegedly false representations in reporting that Plaintiff was acting in a disorderly manner, and consequently issuing the [s]ummons," and "given the temporal proximity between Plaintiff's protected speech (i.e., complaining) and Defendants' adverse action (i.e., issuance of a summons), Plaintiff may be able to establish a retaliation claim."  (*Id.* at 14.)

Judge Tiscione also recommended that the Court deny Plaintiff's motion for summary judgment as to the First Amendment retaliation claim because, if a jury credits the officers'

version of events, Defendants could establish that they had probable cause to arrest Plaintiff during the September 2014 Incident.  (*Id.* at 15.)

### c.   Federal excessive force claim against Sergeant Alfieri

Judge Tiscione recommended that the Court deny Defendants' motion for summary judgment as to Plaintiff's excessive force claim against Sergeant Alfieri.  (*Id.* at 18.)  He found that Sergeant Alfieri "grabbing-and-twisting" Plaintiff's arm and Plaintiff's injuries could support the excessive force claim, and further found that the excessive force allegations are not clearly contradicted by the record.  (*Id.* at 16–17.)  In addition, because of the disputed facts, he also recommended that the Court deny Plaintiff's motion for summary judgment as to this claim. (*Id.* at 18.)

### d.   State assault claim against Officer Williams

Judge Tiscione recommended that the Court deny Defendants' motion for summary judgment because the claim "hinge[s] on facts germane to [Plaintiff's] false arrest claim, which remain unresolved at this stage."  (*Id.* at 19.)

Defendants timely filed objections to the R&R, (Defs.' Obj. to R&R ("Defs.' Obj."), Docket Entry No. 200), and Plaintiff has responded, (Pl.'s Resp. to Defs.' Obj. ("Pl.'s Resp."), Docket Entry No. 206).

## III.  Discussion

### a.   Standards of review

#### i.   Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation

to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error standard when no objections to the magistrate judge's report and recommendation were filed).  The clear error standard also applies when a party makes only conclusory or general objections.  Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("[M]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)."  (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

### ii.   Summary judgment

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir.

2006)).  The role of the court "is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*,

796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545

(2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

A genuine issue of fact exists when there is sufficient "evidence on which the jury could

reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla

of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide

"whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving

party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394,

398 (2d Cir. 2000).

### b.   Defendants' objections to the R&R

Defendants object to Judge Tiscione's recommendation that the Court deny Defendants'

motion for summary judgment as to Plaintiff's (1) First Amendment retaliation claim against all

Defendants; (2) excessive force claim against Sergeant Alfieri; (3) federal and state false arrest

claims against Officer Williams; and (4) assault claim against Officer Williams.[5]  (Defs.' Obj. 2.)

### i.   First Amendment retaliation claim against all Defendants

Defendants argue that even if Plaintiff's versions of the facts are assumed to be true,

Judge Tiscione erred in analyzing Plaintiff's First Amendment retaliation claim.  (Defs.' Obj. 2.)

In support of this argument, Defendants contend that in "the R&R, [Judge] Tiscione postulated

---

[5]  Defendants also argue that Judge Tiscione erred by allowing "special status and solicitude to Plaintiff as a *pro se* litigant and then interpret[ing] the record to provide Plaintiff with 'the strongest argument available'" because Plaintiff is a "prolific and experienced litigant who has filed numerous actions in federal and state courts and engaged in substantive motion practice."  (Defs.' Obj. 2.)  For the reasons explained below, the Court finds that Judge Tiscione did not commit error.

that Officers Spinelli and Williams may have retaliated against Plaintiff by issuing a criminal summons in response to Plaintiff's complaints about the officers' conduct to Sergeant Alfieri," but Plaintiff testified that "[Sergeant] Alfieri made the decision to issue the summons, not Officer Spinelli or Officer Williams." (*Id.* at 2–3.) Defendants also argue that the claim against Officer Williams fails because he "had nothing to do with the issuance of the criminal summons to Plaintiff and otherwise took no action that could reasonably be deemed to have resulted in Plaintiff's confinement," and to the extent this claim against Officer Williams is based on an "alleged threat to 'punch' [Plaintiff], it cannot succeed, as the officer's alleged statement does not constitute the type of adverse action needed to support a retaliation claim." (*Id.* at 3.)

### ii.   False arrest claim against Officer Williams

Defendants argue that "Plaintiff cannot succeed on his false arrest claims" against Officer Williams because he "had nothing to do with the issuance of the criminal summons to Plaintiff and otherwise took no action that could reasonably be deemed to have resulted in Plaintiff's confinement."[6] (Defs.' Obj. 3.)

### iii.   Excessive force claim against Sergeant Alfieri

Defendants object to Judge Tiscione's recommendation that the Court deny their motion as to Plaintiff's excessive force claim against Sergeant Alfieri because Plaintiff's injuries were *de minimis* and there is no evidence of "repugnant force." (Defs.' Obj. 3.)

### iv.   Assault claim against Officer Williams

Defendants object to Judge Tiscione's recommendation that the Court deny Defendants' motion as to Plaintiff's assault claim against Officer Williams because the alleged threat to

---

[6]   Defendants do not object to Judge Tiscione's recommendation that the Court deny their motion for summary judgment as to the false arrest claims against Sergeant Alfieri and Officer Spinelli. (*See generally* Defs.' Obj.)

punch Plaintiff in the face cannot serve as a basis for Plaintiff's assault claim as a verbal threat, standing alone, does not constitute assault under New York law.  (Defs.' Obj. 3.)

### c.   Unopposed portions of the R&R

Defendants do not object to Judge Tiscione's recommendation that the Court deny Defendants' motion for summary judgment as to Plaintiff's false arrest and assault and battery claims arising out of the September 2014 Incident against Sergeant Alfieri and Officer Spinelli. (*See* Pl.'s Obj.)

The Court reviews these recommendations for clear error.  Having reviewed the relevant portions of the R&R, and finding no clear error, the Court adopts the recommendations pursuant to 28 U.S.C. § 636(b)(1).  Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's claims for false arrest and assault and battery based on the September 2014 Incident against Sergeant Alfieri and Officer Spinelli.

### d.   Section 1983 claims

The Court addresses Plaintiff's false arrest claims against Officer Williams, excessive force claim against Sergeant Alfieri, and First Amendment retaliation claim against all Defendants.[7]

---

[7]  Defendants argue that Plaintiff is an experienced and prolific *pro se* litigant who has commenced almost two dozen legal actions in both federal and state courts and should not be afforded such consideration.  (Defs.' Obj. 4.)  The Court denies Defendants' motion and grants Plaintiff the special solicitude afforded *pro se* litigants.  "In some circumstances, such as when a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience," it may be appropriate "to charge a *pro se* litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts."  *Tracy v. Freshwater*, 623 F.3d 90, 101, 103 (2d Cir. 2010) (alteration in original) (quoting *Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009) (per curiam)).  Defendants cite to several of Plaintiff's prior actions to argue that his litigious history requires this action, but none of these cases involved litigation of a motion for summary judgment.  While Plaintiff may have significant general litigation

### i.   False arrest claims against Officer Williams

Defendants argue that Plaintiff's federal and state false arrest claims against Officer Williams fail because he was not involved in the alleged arrest.  (Defs.' Obj. 9.)

"[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'"  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.2006)), *as amended* (Feb. 24, 2016).  A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell*, 449 F.3d at 484 ("It is well-settled in this Circuit that personal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.").  A plaintiff can show personal involvement under section 1983 by establishing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

---

experience, Defendants have not shown that Plaintiff has significant experience in and knowledge of litigating summary judgment motions.  *See Tracy*, 623 F.3d at 104 (concluding that the plaintiff's involvement in ten federal and state actions was "insufficient to justify a full withdrawal of special status with regard to all aspects of this litigation"); *Sledge*, 564 F.3d at 109 (recommending that, "when a court considers whether to withdraw a *pro se* litigant's special status, it should consider not only that litigant's lifetime participation in all forms of civil litigation, but also his experience with the particular procedural setting presented").  Accordingly, the Court denies Defendants' application and affords Plaintiff the solicitude extended to *pro se* litigants.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "[D]irect participation" refers to "personal participation by one who has knowledge of the facts that rendered the conduct illegal," but also encompasses personal participation that may be considered "indirect," "such as ordering or helping others to do the unlawful acts, rather than doing them him- or herself." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *see also Victory*, 814 F.3d at 67 ("Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal'" (quoting *Provost*, 262 F.3d at 155)); *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) ("In this Circuit, a 'direct participant' includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." (quoting *Provost*, 262 F.3d at 155)); *cf. Nunez v. City of New York*, 735 F. App'x 756, 759 (2d Cir. 2018) (holding that the detective-defendant's innocent participation was insufficient to establish personal involvement).

The Court grants Defendants' motion for summary judgment as to the false arrest claims against Officer Williams because the undisputed facts demonstrate that Officer Williams did not participate in, and was therefore not personally involved with, Plaintiff's arrest. Both Plaintiff and Officer Williams testified about Officer Williams' limited interaction with Plaintiff and his lack of involvement with the issuance of a summons to Plaintiff. Plaintiff testified that Officer Williams told him to "get the hell out of here," and Plaintiff asked to speak with a captain. (Pl.'s Dep. 74:2–3.) When Officer Spinelli intervened, he "asked [Officer Williams] for the recorder," and Officer Spinelli "grabbed Plaintiff's left arm," said "come over here," and took Plaintiff outside of the building, (*id.* at 90:8–14), while Officer Williams remained at the security station,

(Williams Aff. ¶ 19).  Officer Williams testified similarly.  (*See id.* at 22–23 (stating that after

"Plaintiff requested to speak with [his] supervisor," Williams "resumed [his] duties . . . by

assisting other members of the public").)

Moreover, Officer Spinelli's testimony further demonstrates Officer Williams' lack of

involvement.  Officer Spinelli admits that he and Sergeant Alfieri were the ones who warned

Plaintiff that his "conduct could result in the issuance of a summons for being disorderly,"

(Spinelli Aff. ¶¶ 21–22), that they also made the decision to issue him a summons, and that they

did so based on Plaintiff's interaction with Sergeant Alfieri, not because of any interaction with

Officer Williams, (Alfieri Aff. ¶ 16; Spinelli Aff. ¶ 23).  They both explained that after "Plaintiff

failed to calm down for several minutes, and instead continued to speak loudly, cause a

disturbance, and refused to cooperate" with them, they agreed that Plaintiff's conduct "justified

the use of [their] discretion to issue a summons for disorderly conduct."  (Alfieri Aff. ¶ 16;

Spinelli Aff. ¶ 23.)  Plaintiff waited in the "Courthouse lobby for approximately ten minutes

while [Officer Spinelli] issued Plaintiff a summons" for disorderly conduct.  (Spinelli Aff. ¶ 24.)

Further, while Plaintiff disputes the details of his interaction with Sergeant Alfieri, his

testimony further demonstrates Officer Williams' lack of involvement with the issuance of a

summons to Plaintiff.  Plaintiff contends that Sergeant Alfieri came running, (*id.* at 97:23–98:4),

and asked "what happened," (*id.* at 102:12–16), and Officer Spinelli responded that "this guy is

causing trouble," (*id.* at 102:23), at which point Sergeant Alfieri told Officer Spinelli to "take

[Plaintiff] inside and give him a summons for disorderly conduct," (*id.* at 103:2–5).

Unlike Sergeant Alfieri and Officer Spinelli, Officer Williams played no role in

Plaintiff's arrest.  Although Officer Williams had the initial encounter with Plaintiff, and there

are disputed issues of fact as to whether Plaintiff's conduct with Officer Williams or his conduct

16

with Sergeant Alfieri and Officer Spinelli formed the basis for probable cause to issue the summons to Plaintiff, it is undisputed that Officer Williams did not issue the summons, did not decide to issue the summons to Plaintiff, and there is no evidence that he influenced the decision of Sergeant Alfieri and Officer Spinelli (or even had a conversation with them) to issue a summons to Plaintiff.  Even if Sergeant Alfieri and Officer Spinelli issued the summons to Plaintiff because of his conduct with Officer Williams, Plaintiff fails to establish Officer Williams' personal involvement.  *See Provost*, 262 F.3d at 156 ("Because the evidence fails to show that [the officer] was aware of the facts that made the arrest unconstitutional, the jury could not hold [the officer] liable on the basis of his personal involvement in the illegal arrests.").  In addition, Plaintiff does not contend, and the record does not contain any evidence to suggest, that Officer Williams was otherwise involved in the alleged false arrest.  *See Cortes v. City of New York*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (dismissing the false arrest claim where there was no evidence that the officer was present for or played any role in the plaintiff's arrest).

Accordingly, the Court grants Defendant's motion for summary judgment as to the false arrest claims against Officer Williams.

### ii.  Excessive force claim against Sergeant Alfieri

Defendants argue that Plaintiff cannot establish "that the alleged force used was more than *de minimis*" and that Sergeant Alfieri "clearly did not act in a manner that was repugnant to the conscious of mankind."  (Defs.' Obj. 12–17.)

Plaintiff denies that the force used by Sergeant Alfieri was *de minimis* and argues that the Court should reject Defendants' argument that the lack of treatment and corroboration for his injuries defeats his claim.  (Pl.'s Mem in Opp'n to Defs.' Mot. for Summ. J. 33–34, Docket Entry No. 174.)

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" during an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the Fourth Amendment's test is one of "objective reasonableness," the inquiry is fact-specific and requires a balancing of various factors. *Id.* When determining whether the force applied was "excessive," a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" (citations omitted)). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397); *see also Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968))). Courts must therefore "evaluate the record 'from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight.'" *Tracy*, 623 F.3d at 96 (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Concepcion v. N.Y.C.*

*Dep't of Educ.*, --- F. App'x ---, ---, No. 19- CV-1693, 2020 WL 7018211, at *2 (2d Cir. Nov. 30, 2020) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

"[T]he extent of injury" is a "relevant" but non-dispositive factor in evaluating an excessive force claim. *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010). "[I]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987). "[A] very minimal injury" may therefore be "'sufficient to trigger potential liability' for excessive force" under the right circumstances. *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 176–77 (E.D.N.Y. 2010); *see also Hayes v. N.Y.C. Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising." (citing *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004))).

There are disputed issues of fact that preclude a finding that Sergeant Alfieri's use of force was reasonable. Sergeant Alfieri directed Officer Spinelli to issue a summons for disorderly conduct for speaking loudly, which is a relatively minor crime. (*See* Criminal Summons.) There is no evidence that Plaintiff posed a threat to the officers or the general public, and the parties dispute whether Sergeant Alfieri pinned Plaintiff against the wall or punched and pushed Plaintiff. Plaintiff testified at a deposition that Sergeant Alfieri grabbed his "left arm," "twisted it," and "pinned" and pushed him against an exterior wall of the Courthouse. (Pl.'s Dep. at 107:6–21.) While Sergeant Alfieri contends that he "did not place [his] hand on Plaintiff at any time," "pin [him] against a wall, punch or kick [him]," (Alfieri Aff. ¶ 15), a reasonable jury could credit Plaintiff's testimony and find that Sergeant Alfieri's use of force in pinning Plaintiff against the wall, and twisting and pinning his arm behind his back, (Pl.'s Dep. at 107:6–21), was an unreasonable use of force in view of the minor nature of the alleged crime,

and the lack of evidence that Plaintiff posed a threat to anyone or attempted to flee.  *See Carpenter v. City of New York*, 984 F. Supp. 2d 255, 267 (S.D.N.Y. 2013) (finding that disputed facts as to whether the "arresting officers punched and kicked [the plaintiff] and that his finger began to bleed" raised "issues of fact which may only be resolved by a jury"); *Johnson v. City of New York*, No. 05-CV-7519, 2008 WL 4450270, at *6 (S.D.N.Y. Sept. 29, 2008) (denying summary judgment to officer because there was a genuine issue of fact as to whether he "punched plaintiff twice in the head and/or neck area").

Moreover, the lack of medical treatment for Plaintiff's injury does not support dismissal of Plaintiff's claim.  Plaintiff contends that he suffered pain in his arm and elbow "on and off" for some time but did not seek medical treatment, (Pl.'s Dep. 200:9–25), but took "Advil" for "about a year."  (*Id.* at 107:6–21, 203:11–18.)  A reasonable jury may ultimately determine that the lack of medical treatment defeats Plaintiff's claim, but a jury, not the Court, must make this determination.  *See Robison*, 821 F.2d at 924 ("While [the plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, the failure is not fatal to her claim."); *Graham v. City of New York*, 928 F. Supp. 2d 610, 618–19 (E.D.N.Y. 2013) (denying summary judgment of the plaintiff's Fourth Amendment excessive force claim where the plaintiff complained that he was forcibly removed from his car and handcuffed without justification and, although he experienced no lasting damage, suffered immense pain and swelling); *Laporte v. Fisher*, No. 11-CV-9458, 2012 WL 5278543, at *3–4 (S.D.N.Y. Oct. 24, 2012) (finding that a punch to the plaintiff's stomach which caused him to lose his breath could constitute excessive force if done to harass plaintiff); *Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2012) (denying summary judgment where the plaintiff was treated for bruising at a hospital and

discharged with Motrin); *Lucky v. City of New York*, No. 03-CV-1983, 2004 WL 2088557, at \*7 (S.D.N.Y. Sept. 20, 2004) (denying the defendants' motion for summary judgment on plaintiff's excessive force claim and finding that "[w]hile [the plaintiff's] injuries appear [to be] *de minimis*, his statements that he was shoved in the police car in a manner that injured his shoulder" created a disputed issue of material fact).

Further, because there are disputed issues of material fact as to whether the force used to arrest Plaintiff was reasonable, for the same reasons, the Court denies Defendants' motion for summary judgment based on qualified immunity. *See Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) (affirming the district court's denial of summary judgment based on qualified immunity where the record contained disputed issues of fact); *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded.") (collecting cases); *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 479 (E.D.N.Y. 2016) ("[T]here are questions of material fact as to whether [the officer's] use of force during the course of [the plaintiff's] arrest was objectively reasonable. Those questions of fact preclude summary judgment on qualified immunity grounds."); *Smith v. Fields*, No. 95-CV-8374, 2002 WL 342620, at \*6 n.9 (S.D.N.Y. Mar. 1, 2002) (finding that allegations that the plaintiff was "slapped and kicked about the face" were sufficient to defeat a claim of qualified immunity at the summary judgment stage); *Nogue v. City of New York*, No. 98-CV-3058, 1999 WL 669231, at \*9 (E.D.N.Y. Aug. 27, 1999) (finding that, where the officer contested plaintiff's allegation that the officer "kicked and punched him while he was lying on the ground," "a trial must be held to decide the facts upon which the claim of immunity rests").

Accordingly, the Court denies Defendants' motion for summary judgment as to the excessive force claim.

### iii.   First Amendment retaliation claim

Defendants argue that Plaintiff cannot state a First Amendment retaliation claim because (1) the officers had probable cause to arrest Plaintiff, which bars a retaliation claim, (Defs.' Obj. 6–7); (2) there is no evidence that the officers who issued the summons had knowledge that Plaintiff told Officer Williams "don't get an attitude," and therefore there is no specific proof of motivation, and Plaintiff's behavior did not change "indicating that there was no chilling of his speech," (*id.* at 6–7); and (3) as to Officer Williams, he was not personally involved in the issuance of the summons and never confined Plaintiff in any way, (*id.* at 9).

Plaintiff argues that his retaliation claims should not be dismissed because Defendants did not have probable cause to arrest him and his statements did not constitute "fighting words" or otherwise unprotected speech.  (*Id.*)  The Court understands Plaintiff to assert a retaliation claim based on Officer Williams' threat to punch Plaintiff in the face in response to his "don't get an attitude" comment and based on Sergeant Alfieri's use of force as punishment for his statement that he wanted to "go home."[8]  (Pl.'s Mem. in Opp'n to Defs. Mot. for Summ. J.)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  *Matthews v. City of New* York, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Eyshinskiy v.*

---

[8]  To the extent that Plaintiff is pursuing a First Amendment retaliation claim against Moody, the Court dismissed that claim in the September 2017 Decision.  (*See* Sept. 2017 Decision.)

*Kendall*, 692 F. App'x 677, 677–78 (2d Cir. 2017); *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir.2013); *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y. 2017) ("'Private citizens alleging retaliation for their criticism of public officials' are generally required to show that 'they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in actual chilling of their exercise of their constitutional right to free speech.'" (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013))), *aff'd*, 726 F. App'x 37 (2d Cir. 2018). "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Wahl v. County of Suffolk*, 466 F. App'x 17, 19 (2d Cir. 2012) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

### 1. Officer Williams

Because, as discussed above, there is no evidence that Officer Williams was personally involved in the issuance of a summons to Plaintiff, Plaintiff cannot state a First Amendment retaliation claim against Officer Williams based on the issuance of the summons.

### 2. Officer Spinelli and Sergeant Alfieri

Because there are disputed issues of material facts that must be decided by a jury, the Court denies Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claims against Sergeant Alfieri and Officer Spinelli. As discussed above, Plaintiff disputes the details of his interaction with Sergeant Alfieri that led to Sergeant Alfieri and Officer Spinelli deciding to issue the summons to Plaintiff. These disputed issues of material fact preclude summary judgment. *See Anderson v. New York*, No. 07-CV-9599, 2012 WL 4513410, at *1 (S.D.N.Y. Oct. 2, 2012) ("Because [the court] found a disputed issue of material

fact, defendants' summary judgment motion seeking to dismiss plaintiff's First Amendment retaliation claim was denied.").

Moreover, construing the facts in a light most favorable to Plaintiff, a reasonable jury could find, as Judge Tiscione noted, that because Plaintiff complained about the conduct of Officers Williams and Spinelli to Sergeant Alfieri, Sergeant Alfieri directed Officer Spinelli to issue him a summons as punishment in retaliation for Plaintiff's complaint.  *See Smith v. Campbell*, 782 F.3d 93, 96–100 (2d. Cir. 2015) (noting that the plaintiff had satisfied the elements for her First Amendment retaliation claims by showing that she had complained to the state police about a state trooper's conduct at a traffic stop and, hours later, the state trooper issued three traffic tickets against her but dismissing the claim on procedural grounds).

Accordingly, the Court denies Defendants' motion for summary judgment as to the First Amendment retaliation claims against Sergeant Alfieri and Officer Spinelli but grants the motion as to the claim against Officer Williams.

### e.   Assault claim against Officer Williams

Defendants argue that Plaintiff's assault claim against Officer Williams cannot "withstand summary judgment as Plaintiff cannot reasonably have been in fear of imminent harmful contact — a required element of an assault claim."  (Defs.' Obj. 11.)  Plaintiff does not respond to this argument.

Under New York law, "[a]n assault is an intentional placing of another person in fear of imminent harmful or offensive contact."  *Chamberlain ex rel. Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 116 (2d Cir. 2020) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)); *see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (citing *Hernandez v. Lattimore*, 612 F.2d

61, 67 (2d Cir. 1979)); *Rucks v. City of New York*, 96 F. Supp. 3d 138, 152 (S.D.N.Y. 2015). A threat alone cannot support a claim for assault. *See Zhang Jingrong v. Chinese Anti-Cult World All*, 311 F. Supp. 3d 514, 555–56 (E.D.N.Y. 2018) ("A routine oral argument, with minimal contact, is not an assault."); *Okoli v. Paul Hastings LLP*, 985 N.Y.S.2d 556, 557 (App. Div. 2014) ("The physical conduct alleged by plaintiff, which amounts to finger pointing and generalized yelling in the context of a heated deposition, is inappropriate behavior, not to be condoned, but, without more, is not the type of menacing conduct that may give rise to a reasonable apprehension of imminent harmful conduct needed to state an actionable claim of assault."); *Carroll v. New York Prop. Ins. Underwriting Assoc.*, 450 N.Y.S.2d 21, 22 (App. Div. 1982) (holding that a threat alone cannot constitute an assault).

The Court grants Defendants' motion for summary judgment as to Plaintiff's assault claim against Officer Williams. While the parties dispute whether Officer Williams threatened Plaintiff, there is no dispute that Officer Williams remained behind the table at the security station, (Williams Aff. ¶ 19; Pl.'s Dep. 60:6–9), and that Plaintiff was not "in fear of imminent harmful or offensive contact," *Chamberlain ex rel. Estate of Chamberlain*, 960 F.3d at 116, as evidenced by his response to Officer Williams' threat to punch him by telling Officer Williams to "take [his] best shot," (*id.* at 77:6–18). Construing the facts in the light most favorable to Plaintiff and crediting his allegation that Officer Williams threatened to punch him, based on the physical location of the parties and Plaintiff's response to Officer Williams to take his best shot at Plaintiff, no reasonable jury could find that Plaintiff was under fear of imminent or harmful contact based on Officer Williams' threat to punch Plaintiff. *See Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y. 1998) ("The [c]ourt finds that [the] [p]laintiff's allegations, even if true, fail to state a claim for assault because no reasonable juror could find that [the officer's]

comments conveyed an imminent or reasonable threat of harmful contact." (citing *Carroll*, 450 N.Y.S.2d at 22)).

Accordingly, the Court grants Defendants' motion for summary judgment as to the assault claim against Officer Williams.

## IV.  Conclusion

For the foregoing reasons, the Court adopts the R&R in part.  The Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest, First Amendment retaliation, and assault claims against Officer Williams, and denies Defendant's motion as to the First Amendment retaliation claims against Sergeant Alfieri and Officer Spinelli and the excessive force claim against Sergeant Alfieri.

Dated: January 7, 2021
       Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge